**FIRST WESTERN BANK, STURGIS,**
**Plaintiff and Appellee,**

v.

**LIVESTOCK YARDS COMPANY, a limited partnership, Defendant and Appellant,**

**and**

**Bank of Belle Fourche, Belle Fourche, South Dakota, a South Dakota banking corporation, Defendant and Appellee.**

**No. 16509.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1989.

Decided Aug. 9, 1989.

Keith R. Smit of Morman Law Firm, Sturgis, for plaintiff and appellee, First Western Bank.

Harlan A. Schmidt, Spearfish, for defendant and appellant, Livestock Yards Co.

Max S. Main of Bennett & Main, Belle Fourche, for defendant and appellee, Bank of Belle Fourche.

MORGAN, Justice.

Livestock Yards Co. (Partnership) appeals from an order granting summary judgment in favor of First Western Bank (Bank) in its cause of action for reformation and foreclosure of a mortgage and dismissing Partnership's counterclaim for negligence. We reverse.

Madden's Livestock Market, Inc. (Corporation) originally owned and operated a sales barn at St. Onge, South Dakota, since 1961. Michael Madden (Madden) took over the operation in 1977 upon the death of his father. In 1983, Madden conceived a plan to split the ownership of the facilities and the operation of the sales barn. He and his wife formed a limited partnership to purchase the sales barn from Corporation. Madden sold limited partnership interests totaling 1.2 million dollars and was the sole general partner of this limited partnership. Pursuant to an operating agreement, Corporation, as the operating company, leased

the sale barn from Partnership; as the holding company, Corporation operated the livestock market and held all licenses and permits.

In March or April 1987, Madden approached Bank for a loan. He testified that he told the banker John Johnson (Johnson) that the money was to be used for operations of *Corporation* and that the loan was to be repaid from the sale of the corporation. Johnson testified that Madden explained to him that various bills of *Partnership* had to be paid and that a sale of the property was pending. Johnson also testified that he knew the limited partnership consisted of passive investors, that Partnership owned the sales barn, and that Corporation held the marketing licenses and permits. Madden delivered a copy of the certificate of limited partnership, a subscribers' list, and a December 31, 1986, financial statement.

Johnson testified that he noticed that the financial statement showed Partnership to be solvent and well-capitalized, with a financial worth of $960,000, with no short-term payables on December 31, 1986. He also testified that it crossed his mind to wonder how Partnership built up $250,000 in bills payable in a four-and-one-half month period. He then asked for and received a list showing the proposed use of the loan proceeds. The heading on this list showed both the corporate and partnership entities. Johnson admitted that he never tried to distinguish the responsibilities between the two entities, and only inquired as to one of the expenditures on the list.

Bank prepared, and Madden, as general partner, executed a 30–day promissory note and mortgage on behalf of Partnership. He and his wife signed a personal guarantee and Bank completed the loan by issuing a certified check payable to Partnership on April 22, 1987. Immediately upon receipt of the funds, Madden diverted $100,000 by purchasing a cashier's check payable to Territorial Savings and Loan of Honolulu, Hawaii, and depositing $150,000 into an account held by Corporation. None of the proceeds were deposited to or received by Partnership. Apparently, the limited partners were not aware of the loan until after default.

After Madden defaulted, Bank brought an action for reformation of the legal description of the mortgage along with foreclosure of the mortgage given by Partnership through its general partner, Madden. Partnership counterclaimed, alleging that Bank was negligent in loaning Madden the money on behalf of the partnership. Both parties filed separate motions for summary judgment. The trial court granted Bank's motion, reforming the legal description of the mortgage, foreclosing the same, and dismissing Partnership's counterclaim.

The trial court determined the following:
1. Partnership was in the business "to purchase and operate a livestock commission sale barn and livestock feedlots."
2. Madden had express and exclusive authority to borrow money and encumber partnership property.
3. From the documents it received from Madden, Bank properly concluded that the debt incurred here was within the scope of partnership business.

Therefore, the trial court concluded, Partnership was bound to make good the loss pursuant to SDCL 48–2–2 [1].

On appeal, Partnership contends that the certificate of limited partnership authorized Madden, as general partner, to conduct only the business of the partnership. It did not extend the same authority to nonpartnership business. Partnership argues that evidence was presented that showed Madden made the loan for corporate and personal purposes (nonpartnership business) of which Bank was or should have been aware. Furthermore, this disputed evidence raises a genuine issue of material fact precluding summary judgment.

Summary judgment is proper only when the moving party shows that he is entitled

---

**1.** SDCL 48–2–2 provides:
  An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.

to judgment as a matter of law because there is no genuine issue as to any material fact. SDCL 15–6–56(c). *Dahl v. Sittner,* 429 N.W.2d 458 (S.D.1988). In *Nizielski v. Tvinnereim,* 429 N.W.2d 483, 485 (S.D. 1988), we defined our scope of review from an order granting summary judgment as follows:

> Our scope of review on appeal is not under the 'clearly erroneous' doctrine, but rather under the strict standards attendant upon entry of summary judgment as delineated in [*Wilson v. Great Northern Railway Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968)]:
>
> (1) Evidence must be viewed most favorable to the nonmoving party;
>
> (2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;
>
> (3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material facts exists;
>
> (4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious that it would be futile to try them;
>
> (5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant;
>
> (6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

Pursuant to our standard of review, we must view the record most favorably to the limited partnership. In doing so, we are of the opinion that there are substantial issues of material fact that require resolution by trial.

One issue of material fact is whether Madden was acting on behalf of the partnership, the holding company, or the corporate operating company, when he approached Bank for a short-term loan. There is disputed testimony as to what Madden told Johnson. We must view this testimony in a light most favorable to Partnership. Furthermore, we find additional support for the theory that Madden was acting on behalf of himself or Corporation when obtaining the loan. Madden provided Bank with a financial statement showing Partnership to be solvent and well-capitalized *with no short-term payables.* The list showing how loan proceeds were to be used included obvious operating company debts. Whether or not Madden was acting on behalf of Partnership becomes a material question of fact.

Another issue of material fact grows out of the language in the certificate of limited partnership granting authority to the general partner. The certificate provides:

> The general partner shall have exclusive power and authority *to conduct the business and affairs of the partnership.* Any action taken by the general partner shall constitute the act of and bind the partnership. No person dealing with this partnership shall be required to inquire into the authority of the general partner. [Article XI(A)] (Emphasis added.)

Acts of a general partner which are not apparently for the carrying on of the business of the partnership in the usual way do not bind the partnership unless authorized by the other partners. SDCL 48–2–2.

Partnership argued that it presented evidence that it did not *operate* a sales barn. It argues that Corporation operated the sale barn pursuant to its operating agreement, that Corporation held all operating licenses, and that Madden obtained the loan to guarantee corporate operating funds, clearly outside the scope of partnership business. Whether or not Madden's actions in making the loan were outside the scope of partnership business is a material question of fact.

Bank argues that even if obtaining the loan was outside the scope of partnership business, the certificate of partnership and powers of attorney signed by the limited

partners amounts to "authorization," pursuant to SDCL 48–2–2. Partnership responds that SDCL 48–2–2 requires express authority for acts of a general partner, which do not appear in the usual course of the business. *Ellis v. Mihelis,* 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7 (1963). Furthermore, the certificate of limited partnership establishes an advisory board for authorizing Madden to borrow money and mortgage real property. The certificate provides, in pertinent part:

> The sole and only purpose of the advisory board shall be to review each loan, renewal, renegotiation or extension of any management or service contract, leases, purchases or sales to which the partnership is a party ... contemplating any or all of the following categories:
>
> ....
>
> 3. loans or mortgage placement[.] [Article XV(B)]

We agree with the California Supreme Court in *Ellis,* 32 Cal.Rptr. 415, 384 P.2d 7. SDCL 48–2–2 requires express authority. Whether or not the limited partnership expressly authorized the loan becomes a factual question. We perceive this to be clearly raised by the record.

■ Finally, Partnership contends that Bank knew or should have known that Madden was not acting on behalf of Partnership and breached its legal duty by failing to diligently determine whether Madden had the authority to secure a loan on behalf of the partnership. *Maurin v.*

*Lyon,* 69 Minn. 257, 72 N.W. 72 (1897); *Boyd v. Leasing Assoc., Inc.,* 516 S.W.2d 485 (Tex.Civ.App.1974). Therefore, Partnership argues, the counterclaim in negligence should not have been summarily dismissed. We agree.

Negligence has been defined as the failure to exercise the degree of care demanded by the circumstances. 57A Am.Jur.2d *Negligence* § 6 (1989). Whether it exists depends upon the particular circumstances surrounding the parties at the time. Generally, negligence is a question of fact for determination by a jury. Actions in negligence are not usually suitable for summary judgment. *Wilson,* 157 N.W.2d 19.

In viewing the record most favorably to Partnership, we find substantial evidence that Bank knew or should have known that the loan proceeds were intended for Madden's Corporation. This evidence raises a material issue of fact as to Bank's negligence.

Because of the factual questions raised in this case, the trial court erred in granting the summary judgments.

Reversed.

All the Justices concur.