**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Plaintiff and Appellant,

v.

**Larry D. MERRILL, Individually and as Guardian Ad Litem of Tamara Marie Merrill; Andrew A. Wipf, as Administrator of the Estate of Kenneth Andrew Wipf, Deceased; Mark Hattum; Robert Hattum; Beverly Hattum; Todd Hattum; All Nation Insurance Company; Hughes County, South Dakota; Robert Ingle; Robert Meyer; and Continental Insurance Company, Defendants and Appellees.**

Nos. 16505, 16512.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1989.

Decided April 18, 1990.

**556**

Chester A. Groseclose, Jr., of Richardsons, Groseclose, Kornmann & Wyly, Aberdeen, for plaintiff and appellant.

David L. Braun of Gors, Braun and Zastrow, Pierre, Edwin Evans of Davenport, Evans, Hurwitz & Smith, Douglas M. Deibert of Cadwell, Sanford & Deibert, William Taylor of Woods, Fuller, Shultz & Smith, Sioux Falls, Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for defendants and appellees.

BERNDT, Circuit Judge.

On the evening of December 31, 1986, a one vehicle accident occurred on a Hughes County road involving a pickup owned by Kenneth Wipf and driven by Tamara Merrill. The four occupants in the pickup were: Kenneth Wipf, Tamara Merrill, Mark Hattum and Nicolle Hageman. Kenneth Wipf died as a result of the accident and Mark Hattum received serious bodily injuries, leaving him a quadriplegic.

Four lawsuits arose out of the accident. Andrew Wipf, Administrator of the Estate of Kenneth Wipf, brought a wrongful death action against Tamara Merrill and against Hughes County and two county employees for failure to properly maintain the road. Mark Hattum brought a personal injury action against Tamara Merrill, Hughes County, two county employees and Andrew Wipf in his capacity as administrator of Kenneth Wipf's estate. Hattum's parents and brother brought an action against Tamara Merrill, Hughes County, two county employees and Andrew Wipf, Administrator of Kenneth Wipf's estate, for loss of society, services, emotional distress and medical expenses. A fourth suit by Nicolle Hageman was settled and she is no longer a party.

Kenneth Wipf's vehicle was insured under a policy issued by All Nation Insurance Company (All Nation). The policy provided the statutory minimum coverage of $25,000 per person and $50,000 per accident for Kenneth Wipf and other persons operating his pickup with permission. All Nation acknowledges primary liability coverage but its limits are insufficient to cover the damages claimed.

Mark Hattum was insured under his parents' policy with Continental Insurance Company (Continental). The policy included underinsured motorist coverage. Under this coverage, Continental agreed to pay to the insured (up to the stated limits) the amount by which a judgment obtained by the insured exceeded the liability coverage of the party against whom the judgment was taken.

Tamara Merrill claimed coverage under two policies issued to her parents (Larry and Carol Merrill) by American Family Mutual Insurance Company (American Family). Each policy provided liability limits of $100,000 per person and $300,000 per accident and medical expense coverage of $10,000 per person. The policies covered family members while operating vehicles not owned by the Merrills or their family as long as the family members were not specifically excluded from American Family's coverage.

The main controversy in this appeal is a determination of the insurance coverage provided to Tamara Merrill by American Family. If any liability attaches to Tamara for her acts while driving, the outcome of this appeal will determine the order in

which each insurer will be liable. If coverage is provided by American Family, that insurance applies to Mark Hattum's claim and Continental's coverage will be reduced by the $25,000 available under the All Nation policy *and* the $100,000 available under the American Family policy. If Tamara is not covered under the American Family policy, Continental's liability will be reduced *only* by the $25,000 coverage provided by All Nation.

American Family denies any coverage for Tamara. The facts show that the Merrill family has been insured by American Family since the 1970s. In 1983 American Family became aware of the fact that one of the Merrill children had attained driving age. An agent's secretary contacted Larry Merrill by memo stating that some action was necessary regarding his oldest son because he was of driving age. As a result, the oldest son was included in the Merrills' policies for an additional charge in the premium. According to American Family, one of the Merrills' policies lapsed in January of 1985. The policy was reinstated in May 1985, however, the Merrills informed the agent's secretary that there were no longer any household members of driving age because the oldest son was going to college.

Later in 1985, Larry's wife, Carol, contacted the agent's secretary concerning coverage rates for their two oldest children, including Tamara. The rate information was conveyed to Mrs. Merrill and it was decided to include both children in the policies. In December 1985, the premium notice arrived including an additional charge for the two oldest children. Larry Merrill informed American Family, through its agent, that he was not going to pay the premium and wanted the children removed from coverage.

American Family contends that its agent sent the Merrills declaration pages showing the requested exclusion of the children and exclusion forms for Larry Merrill's signature. Merrill recalls receiving some forms but does not recall what they contained. In any event, no signed, written agreement excluding Tamara from coverage was ever

returned to American Family by the Merrills.

When the present matter arose, American Family brought a declaratory judgment action seeking a trial court determination that the policies issued to the Merrills provided no liability coverage for Tamara. American Family based its position on Larry Merrill's requested exclusion of his two oldest children from coverage. Larry Merrill contended that the children were covered under the policies as household members for no additional premium. Continental, which provides underinsured coverage for the Hattums, claimed that the alleged exclusion of the Merrill children was invalid because there was no written agreement signed by the Merrills to support the exclusion. Continental moved for summary judgment on the basis that SDCL 58–11–9.3 requires that a written agreement signed by the insured be obtained by an insurer to support such an exclusion of coverage. The trial court agreed and granted summary judgment against American Family finding that no signed, written exclusion agreement had ever been obtained.

Two issues are raised on appeal:
(1) Whether SDCL 58–11–9.3 requires a signed, written agreement between an insurer and insured in order to exclude from coverage a person who would otherwise be covered under an automobile insurance policy? The trial court held that it does and granted summary judgment. We affirm.
(2) Whether the trial court erroneously refused to award Larry Merrill attorney fees incurred by him as a result of his successful defense of this declaratory judgment action? The trial court held in the negative. We affirm.

Prior to reaching the merits of these issues, it is necessary to determine the scope of review for this case. This is a summary judgment action.

Our scope of review on appeal is not under the 'clearly erroneous' doctrine, but rather under the strict standards attendant upon entry of summary judgment as delineated in [*Wilson v. Great*

*Northern Railway Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968)]:

(1) Evidence must be viewed most favorable to the nonmoving party;

(2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material fact exists;

(4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious that it would be futile to try them.

(5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant;

(6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*First Western Bank v. Livestock Yards,* 444 N.W.2d 387, 389 (S.D.1989) (*quoting Nizielski v. Tvinnereim,* 429 N.W.2d 483, 485 (S.D.1988)).

▓ Our resolution of the first issue in this case is dependent upon the proper interpretation of SDCL 58–11–9.3. This court has never had an opportunity to interpret this statute and, therefore, this is a case of first impression. SDCL 58–11–9.3 reads as follows:

An insurance policy covering a private passenger automobile or other motor vehicle registered or principally garaged in this state may by *written agreement with the named insured exclude a named individual* from coverage or contain a restrictive endorsement reducing the limits of liability or collision coverage when the vehicle is operated by a named person or class of persons, provided,

however, that the liability coverage may not be less than the minimum prescribed by chapter 32–35 as amended. (emphasis added).

The trial court interpreted the statute to mean that a written agreement must be signed by the insured in order to exclude an individual otherwise insured from coverage. We agree.

In determining the meaning of a statute, it is necessary to follow the general rules of statutory construction. "The intent of a statute must be derived from the statute as a whole, from its language, and by giving the language its plain, ordinary and popular meaning." *American Rim & Brake, Inc., v. Zoellner,* 382 N.W.2d 421, 424 (S.D. 1986) (*citing Moulton v. State,* 363 N.W.2d 405 (S.D.1985)). "Statutory analysis begins with the language of the statute and absent a clearly expressed legislative intent to the contrary that language must ordinarily be considered conclusive." *State v. Galati,* 365 N.W.2d 575, 577 (S.D.1985) (*citing Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)).

In SDCL 58–11–9.3, the operative language is, "written agreement with the named insured." The words "written agreement" must be interpreted in their ordinary sense. SDCL 2–14–1. The ordinary meaning of this term is a written document which represents an agreement between the insured and the insurer and signed by the insured. The trial court correctly stated that, "the word 'written' would be meaningless and surplusage had the legislature intended to allow other forms of agreements to exclude coverage." If the insurer is required to obtain the insured's signature, then the insured is provided with the opportunity to agree or disagree with the provision for exclusion. To interpret the statute in any other way would put the insured at the mercy of the insurer.

This interpretation finds support in the decision of the California Court of Appeals in *Kincer v. Reserve Insurance Company,* 11 Cal.App.3d 714, 90 Cal.Rptr. 94 (Cal.Ct. App.1970). In *Kincer,* the California Court

interpreted a statute similar to SDCL 58–11–9.3 in a manner supporting the position that the insured's signature is required. The court stated:

> Although insurance companies have the right to limit uninsured motorist coverage and, when they have done so, the plain language of the limitations must be respected [citation omitted], uninsured motorist coverage may only be omitted from the policy upon *written agreement signed by the insurer and insured.* (*Mission Ins. Co. v. Brown,* 63 Cal.2d 508, 510, 47 Cal.Rptr. 363, 407 P.2d 275; *see also Lopez v. State Farm Fire and Cas. Co.,* 250 Cal.App.2d 210, 212, 58 Cal.Rptr. 243; *Utah Home Fire Ins. Co. v. McCarty,* 266 Cal.App.2d 892, 895, 72 Cal.Rptr. 460.) (emphasis added).

*Kincer,* 90 Cal.Rptr. at 96. It is noteworthy that the statute interpreted in *Kincer* only used terms requiring an "agreement in writing," but not mentioning any requirement of a signature. *Kincer,* 90 Cal. Rptr. at 96. It is also noteworthy in the case that no agreement was signed between the insured and insurer. The court held that coverage was not excluded due to the insurer's failure to obtain a signed, written agreement. *Kincer, supra.*

American Family argues that a signature on a document is not the only means to imply an agreement. In support of its argument, it cites numerous cases ranging from a parol evidence dispute in a quitclaim deed action to a disputed arbitration settlement clause in an employment case. These cases are not on point. Insurance is a creature heavily regulated by statute to prevent disputes between insurers and insureds. If SDCL 58–11–9.3 had been followed in this case, no dispute would exist. Instead, American Family attacks the language of the statute.

American Family's construction of SDCL 58–11–9.3 as not requiring a signed, written agreement is also against the public policy of liberal construction of such statutes in favor of coverage. In *Clark v. Regent Ins. Co.,* 270 N.W.2d 26 (S.D.1978), this court set forth the policy behind SDCL 58–11–9, the forerunner of SDCL 58–11–9.-3:

> The purpose of the uninsured motorist statutes is to provide the same insurance protection to the insured party who is injured by an *uninsured or unknown* motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance. To accomplish that purpose, the provisions of the uninsured motorist statutes are construed liberally in favor of coverage. (emphasis original) (footnotes omitted).

*Clark, supra* at 29. While *Clark* discusses the "physical contact" clauses of insurance policies of the past, the same policy holds true today.

Based upon the foregoing analysis, we hold that the trial court correctly concluded as a matter of law that SDCL 58–11–9.3 requires a signed, written agreement to exclude a named person from coverage under an automobile insurance policy. In this case, testimony and deposition exhibits were presented to the trial court concerning Larry Merrill's requests to exclude his children (including Tamara) from coverage and that his premiums be reduced (requested on at least three occasions) to reflect the exclusions. However, it is clear that no signed, written agreement concerning the exclusions ever came into being. Thus, the trial court properly granted summary judgment against American Family.

■ The second issue involves the denial of Merrill's claim against American Family for attorney fees based on an unreasonable denial of coverage. Merrill claimed a right to an award of attorney fees under SDCL 58–12–3 which provides in pertinent part:

> In all actions . . . if it appears from the evidence that such [insurance] company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, . . . the trial court . . . shall . . . allow . . . a reasonable sum as an attorney's fee to be recovered and collected. . . .

In denying Merrill's claim, the trial court specifically found that the question raised by American Family was open to interpretation and that there were no cases in this jurisdiction settling the issue. The trial court further found that American Family was not guilty of unreasonable or vexatious conduct in asserting and relying on its coverage defense and in seeking a determination of the coverage question in this declaratory judgment action. We agree.

This case is very similar to *All Nation Ins. Co. v. Brown*, 363 N.W.2d 216 (S.D. 1985) where the insurer disputed coverage. This court did not find the conduct of the insurer in that case to be vexatious or without reasonable cause. *Id.* Further, this is a question of fact and it is reviewed under the clearly erroneous standard. *Firemen's Ins. Co. v. Bauer Dental Studio, Inc.*, 626 F.Supp. 1365 (D.S.D. 1986); *Ewalt v. Mereen–Johnson Mach. Co.*, 414 N.W.2d 28 (S.D.1987); *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130 (S.D.1984). The trial court's determination must stand if it is based on sound reasoning. Here, the facts support the trial court's decision and it is not clearly erroneous.

Affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

BERNDT, Circuit Judge, for MILLER, J., disqualified.

SABERS, Justice (dissenting).

The trial court decision interpreting the term "written agreement" in SDCL 58–11–9.3 to mean a written document *"signed by the insured"* exceeds the plain, ordinary and popular meaning of the statutory language. (Emphasis added). An agreement is "a coming together of minds." Black's Law Dictionary 62 (5th ed. 1979). A written contract "is one which in all its terms is in writing." *Id.* at 294. Accordingly, a written agreement is a coming together of minds with the terms of the coming together in writing. Although the writing may normally be signed by the parties, it is not a prerequisite for the existence of a written agreement.

There is a vast difference between statutorily mandated uninsured and underinsured motorist coverage and the simple requirement that limiting coverage for a named individual be done by written agreement. To omit the former requires a writing *signed by the parties. See Kincer v. Reserve Ins. Co.*, 11 Cal.App.3d 714, 90 Cal.Rptr. 94 (1970). However, to limit coverage, which the contracting parties may freely do, only requires a *writing.* Furthermore, this statutory interpretation does not put the insured at the mercy of the insurer, as the majority claims, because the insurer must still establish the existence of a written agreement.

The majority opinion notes that:

[t]estimony and deposition exhibits were presented to the trial court concerning Larry Merrill's requests to exclude his children (including Tamara) from coverage and that his premiums be reduced (requested on at least three occasions) to reflect the exclusions[;]

yet fails to note that:

1) Larry Merrill did *not* pay for coverage for Tamara, and

2) the written endorsements excluding coverage may have become a part of a written agreement, if not when they were received by the insured, then when the policy to which they became attached was reissued or renewed and paid for.

This evidence raises a genuine issue of material fact regarding the existence of an agreement about policy coverage. Consequently, summary judgment was clearly improper. *State, Dep't of Revenue v. Thiewes*, 448 N.W.2d 1 (S.D.1989); *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987).

Therefore, we should reverse and remand to determine whether an agreement exists "in writing."