**FIRST WESTERN BANK, STURGIS, a South Dakota banking corporation, Plaintiff and Appellant,**

v.

**LIVESTOCK YARDS COMPANY, a limited partnership, Livestock Yards Co., a South Dakota corporation and the Bank of Belle Fourche, a South Dakota banking corporation, Defendants and Appellees.**

No. 17134.

Supreme Court of South Dakota.

Argued Jan. 9, 1991.

Decided March 6, 1991.

Keith R. Smit of Morman, Smit, Hughes, Strain, Molstad & Haivala, Sturgis, for plaintiff and appellant (Michael W. Strain of Morman, Smit, Hughes, Strain, Molstad & Haivala, on brief).

Harlan A. Schmidt, Spearfish, for defendant and appellee Livestock Yards Co.

HERTZ, Acting Justice.

First Western Bank, Sturgis (Bank), appeals from a judgment entered pursuant to a jury verdict in favor of Livestock Yards Company (Partnership) on Bank's foreclosure action. Bank contends that Partnership was not entitled to a jury trial, that Partnership's agent had authority to undertake the loan at issue as a matter of law, and that the trial court erred in instructing the jury. We affirm.

## FACTS

Madden's Livestock Market, Inc. (Corporation) was a commission sales barn at St. Onge, South Dakota, which was owned and operated by Michael Madden (Madden). In 1983, Madden and his wife formed a limited partnership pursuant to his plan to split the ownership of the sales barn facilities from its operation. Madden sold $1.2 million of limited partnership interests, and he was the general partner of the limited partnership. The limited partnership then purchased the sales barn from Corporation. Corporation, as the operating company, entered into an operating agreement leasing the sales barn from partnership, and as holding company, Corporation held all licenses and permits to operate the sales barn.

The Certificate of Limited Partnership of Livestock Yards Company provided in part as follows:

## ARTICLE X.

Powers and Limitations of Partnership

The partnership shall have all of the powers of a partnership without limited partners under the South Dakota Uniform Partnership Act, including, by way of amplification and not in limitation, the power to:

. . . . .

B. to borrow money;
C. to mortgage, pledge or encumber in any manner all or any part of any real or personal property or any interest therein[.]

. . . . .

## ARTICLE XI.

Power and Authority of Partners

A. The general partner shall have exclusive power and authority to conduct the business and affairs of the partnership. Any action taken by the general partner shall constitute the act of and bind the partnership. No person dealing with this partnership shall be required to inquire into the authority of the general partner.

B. The general partner shall have . . . full power and authority to take any action consistent with the purpose of the partnership . . ., or carry out any of the powers of the partnership[.]

The certificate also created an advisory board, the purpose of which was to review loans, contracts, leases and other transactions. The board's function was limited to determining whether individual transactions were fair and favorable; the board had no power to take any action in regard to transactions of partnership.

A few years after the limited partnership was started, Madden devised a plan to form a new corporation to buy back the sales barn from the limited partners, and to buy a second sales barn in Belle Fourche along with some property in Montana. In April, 1987, Madden approached Bank's president, John E. Johnson (Johnson), for a loan of $250,000. Johnson testified that Madden told him the money was to be used to pay outstanding bills, and that the loan would be repaid from the proceeds of the pending sale of Corporation. Johnson asked Madden to provide Bank with additional information, and subsequently Madden delivered to Johnson a copy of the certificate of limited partnership, a list of the names of the limited partners, and the December 31, 1986, financial statement of Partnership.

Johnson brought this information to a meeting of Bank's loan committee on April 21, 1987, where Madden's loan application was considered. The loan committee tentatively approved the loan, subject to the requirement that Johnson obtain a list of the bills payable, a confirmation of the sale of Corporation, the written approval of

Partnership's Advisory Board and a list of the names of the limited partners. The next day, April 22, 1987, Johnson relayed to Madden the committee's tentative approval and the additional documentation needed. That same day, Madden brought to the Bank a list of bills payable, as follows:

Madden's Livestock Market, Inc.
&
Livestock Yards Co.

| | |
|---|---|
| Telephone system | $13,693.92 |
| Truck scale | 38,224.38 |
| Posts & Plank | 8,790.60 |
| Insurance | 18,820.00 |
| Taxes | 9,262.06 |
| Scale repair | 3,964.69 |
| Back-up beam scale | 3,341.68 |
| Trailer loading chutes | 13,500.00 |
| Repair sewer system | 1,350.00 |
| Hay contracts | 71,000.00 |
| Corn | 3,115.61 |
| April Payroll | 25,000.00 |
| April Payables | 12,000.00 |
| Total | $222,062.94 |

Johnson admitted that he never tried to distinguish or allocate the bills between the two entities, and only inquired as to one of the listed expenditures. In fact, Johnson admitted that he knew that the bills for hay, corn, payroll, and payables were not Partnership debts, and that the financial statement Madden had provided him showed Partnership to be solvent and well-capitalized with no short-term payables. Although he knew that at least $111,115.00 (the total of hay, corn, payroll, and payables) of the bills were attributed to Corporation, Johnson suggested that the loan be made to Partnership since it owned the sales barn and the forty acres upon which it was situated. Even though Madden said he needed the loan to pay existing debts of Partnership, Johnson never inquired if any of the bills listed were for materials already purchased or debts actually incurred.

Because Partnership held the only available collateral, Bank prepared, and Madden, as general partner, executed a 30–day promissory note and mortgage on behalf of Partnership on April 22, 1987. Madden and his wife personally guaranteed the loan, and Bank issued Madden a certified check payable to Partnership that day. Madden immediately diverted the funds and none of the loan proceeds were ever received by or deposited to accounts of Partnership. Johnson did not satisfy the loan committee's requirements for approval of the loan as Madden never provided Bank with a confirmation of the sale of Corporation or written approval of the Advisory Board. In fact, the limited partners were not aware of the loan until after Madden defaulted.

When Madden defaulted, Bank brought this action for reformation of the legal description of the mortgage and foreclosure of the mortgage. Partnership counterclaimed, alleging that Bank was negligent in loaning Madden the money on behalf of Partnership. The trial court granted Bank's motion for summary judgment, reforming the legal description, foreclosing the mortgage, and dismissing Partnership's counterclaim. We reversed and remanded for trial. *First Western Bank v. Livestock Yards Co.*, 444 N.W.2d 387 (S.D. 1989) (*First Western Bank I*). The case was tried before a jury which returned a verdict disallowing both Bank's action and Partnership's counterclaim. Bank appeals.

## ISSUES

1. Did the trial court err in permitting the case to be tried to a jury?

2. Did the trial court err in submitting to the jury the question of Madden's authority?

3. Did the trial court err in instructing the jury?

## ANALYSIS

*1. Jury Trial.*

Bank contends that Partnership was not entitled to a jury trial because its counterclaim alleging negligence was in fact an affirmative defense to its equitable action of foreclosure. Partnership counters that its claim against Bank for negligence was a substantive legal counterclaim and a compulsory counterclaim, and consequently Partnership was entitled to a jury trial as a matter of right.

■ We have considered whether a party to a civil action is entitled to a jury trial on a number of occasions. We stated our general rule most recently in *Nizielski v. Tvinnereim*, 453 N.W.2d 831 (S.D.1990):

> The right to a jury trial is guaranteed both litigants in Article VI, § 6 of the South Dakota Constitution and SDCL 15–6–38(a), (b). This right, however, does not exist in all civil cases. In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion. Conversely, when the action is at law, either party has a right to a jury trial. To determine whether the action arises at law or equity, we look to the pleadings, including the complaint, answer, cross-complaint and prayer for relief.

*Id.* at 832–33 (citations omitted); *Skoglund v. Staab*, 312 N.W.2d 29, 31 (S.D.1981). In examining the development of this rule, however, we note that the United States Supreme Court has abolished the requirement that a legal claim must not be incidental. In *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Court held that in view of the flexible procedures of the Federal Rules of Civil Procedure, the right to a jury trial of any legal issue raised by counterclaim in an equitable action cannot be denied, regardless of whether the legal issues presented are characterized as "incidental" to the equitable issues. *Id.* at 473, 82 S.Ct. at 897, 8 L.Ed.2d at 48. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). As a result, the analysis of whether a party raising a counterclaim in an equity action is entitled to a jury trial depends only on the nature of the counterclaim. If the relief sought is equitable, the decision of whether to empanel an advisory jury is wholly within the trial court's discretion. *Nizielski*, at 833. If, however, the counterclaim seeks legal relief, the party raising a legal claim is entitled to a jury trial as a matter of right. *Dairy Queen*, 369 U.S. at 473, 82 S.Ct. at 897, 8 L.Ed.2d at 48; *United Transp. Union Local 74 v. Consolidated Rail Corp.*, 881 F.2d 282, 286 (6th Cir.1989), *vacated and remanded on other grounds*, 494 U.S. ——, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Our previous decisions imposing the additional requirement that the legal relief not be incidental are modified to the extent that they are inconsistent with this opinion.

This rule recognizes the logical effect of compulsory counterclaims. Under our rules of civil procedure, a party may be required to raise as a counterclaim in an equitable action a legal claim which, if brought as a separate action, would entitle the claimant to a jury trial. SDCL 15–6–13(a); Fed.R.Civ.P. 13(a); *see* Annotation, *Right in Equity Suit to Jury Trial of Counterclaim Involving Legal Issue*, 17 A.L.R.3d 1321, 1342–43 (1968). Because our rules require that such claims be raised or forever barred, defendants with legal counterclaims must be afforded the constitutional right to a jury trial on counterclaims which are legal in nature. A compulsory legal counterclaim filed in an equitable action must, on demand of either party, be tried to a jury because to hold otherwise would deny to the counterclaimant the right to a jury trial. *Beacon Theatres*, 359 U.S. at 509–10, 79 S.Ct. at 955–56, 3 L.Ed.2d at 997; Annotation, *Right in Equity Suit to Jury Trial of Counterclaim Involving Legal Issue*, 17 A.L.R.3d at 1342–43.

■ Bank's complaint seeking foreclosure of the mortgage is unquestionably an equitable action. *See* SDCL 21–50–2; *Lounsberry v. Kelly*, 32 S.D. 160, 142 N.W. 180, on reh'g 32 S.D. 456, 143 N.W. 369 (1913). Thus, we must determine whether Partnership's counterclaim is legal in nature. In its prayer for relief, Partnership sought dismissal of Bank's complaint, judgment against Bank, and "[a]lternatively, for judgment against plaintiff in an amount adequate to compensate [Partnership] for the financial detriment caused by plaintiff's negligence[.]" At trial, Partnership introduced testimony regarding the decreased value of Partnership caused by Bank's foreclosure action and the resulting closure of the sales barn. Testimony was presented indicating a loss of approximately $600,-

000, well in excess of the amount Bank sought to recover on the loan to Madden. Partnership's counterclaim sought a money judgment, and such claims are unquestionably legal. *Dairy Queen,* 369 U.S. at 476, 82 S.Ct. at 899, 8 L.Ed.2d at 50; *Scott v. Neely,* 140 U.S. 106, 110, 11 S.Ct. 712, 714, 35 L.Ed. 358, 360 (1891). Thus, Partnership was entitled to a jury trial as a matter of right, and the trial court's ruling was proper.

Additionally, in *First Western Bank I,* we noted that claims of negligence are generally "a question of fact for determination by a jury." 444 N.W.2d at 390. Bank argues that notwithstanding its label as a counterclaim, Partnership's claim actually is an affirmative defense of avoidance and not an action at law. *See* SDCL 15–6–8(c); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1275 (1990). To constitute an avoidance, Partnership would first have to admit the existence of Bank's cause of action, and then allege facts by which it is avoided. *Uri v. Hirsch,* 123 F. 568, 570 (W.D.Mo.1903). In its answer, Partnership denied every allegation of Bank's complaint. It did not seek to avoid liability; rather, it denied that it was liable on any claim of Bank, and set out a separate action for damages arising out of the alleged negligence of Bank. Partnership's counterclaim for money damages presents an action at law, giving rise to the right to a jury trial. *Dairy Queen, supra; Beacon Theatres, supra.*

### 2. Authority of Madden.

■ Next, Bank argues that it was error for the trial court to submit to the jury the question of Madden's authority. Bank contends that as a matter of law, the certificate of limited partnership conferred on Madden express authority to take out the loan and mortgage Partnership property, and consequently the issue should have never reached the jury. On review, we must determine whether the issue was one of fact, properly submitted to the jury, or one of law for the trial court alone to decide.

In *First Western Bank I,* one of the reasons the trial court granted summary judgment to Bank was that "Madden had express and exclusive authority to borrow money and encumber partnership property." 444 N.W.2d at 388. In reversing, we held that a material *fact* issue was raised as to whether Madden's actions were outside the scope of partnership business. *Id.* at 389. There, as here, Bank argued that "even if obtaining the loan was outside the scope of partnership business, the certificate of partnership and powers of attorney signed by the limited partners amount[ ] to 'authorization,' pursuant to SDCL 48–2–2." *Id.* at 389–90.

Bank contends that the provisions of the certificate of limited partnership giving the general partner power to borrow money and mortgage property, in addition to the exclusive power to conduct the business of the partnership, establish Madden's authority as a matter of law. This argument is contrary to our decision in *First Western Bank I.*

While it is true that the certificate of limited partnership gave Madden the authority to borrow money and mortgage property, that power was limited to the conduct of partnership business. Partnership's contention at trial was that Madden was acting outside the scope of the partnership business when he sought a loan to pay debts of Corporation. Partnership argued that Bank was negligent in loaning Madden $250,000 in Partnership's name and taking a mortgage on Partnership property to secure the loan, when Bank knew that over one-half of the bills Madden proposed to pay with the loan were obligations of Corporation, and other items were not even debts that had been incurred. In submitting the issue of Madden's authority to the jury, the jury had to resolve the factual question of whether he was acting within the scope of partnership business.

■ In our first decision in this case we held that SDCL 48–2–2 requires that Madden receive the express authorization for acts outside the scope of usual partnership business, and such authorization was not

conferred by the language of the certificate of limited partnership. We went on to say: "Whether or not the limited partnership expressly authorized the loan becomes a *factual* question." *Id.* at 390 (emphasis added). As Partnership correctly points out, a question that has been decided on a former appeal is the law of the case, and we will not decide the same issue anew or on appeal after remand. *Western States Land & Cattle Co. v. Lexington Ins. Co.,* 459 N.W.2d 429, 435 (S.D.1990); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 260 (S.D. 1974). The trial court properly followed the mandate of our first decision in submitting the question of Madden's authority to the jury.

*3. Jury Instructions.*

■ Last, Bank challenges the jury instructions in regard to Madden's authority, and Partnership's negligence claim. When reviewing jury instructions, we look at all the instructions as a whole and, if they provide a full and correct statement of the law applicable to the case, the instructions are not erroneous. *Frazier v. Norton,* 334 N.W.2d 865, 870 (S.D.1983). We have examined the instructions given by the trial court as well as those proposed by Bank, and conclude that the jury was properly instructed on the applicable law.

Affirmed.

MILLER, C.J., and HENDERSON, WUEST and SABERS, JJ., concur.

MORGAN, Retired Justice, not participating.