STATE of South Dakota, Plaintiff
and Appellant,

v.

Collins CATCH THE BEAR,
Defendant and Appellee.

No. 14349.

Supreme Court of South Dakota.

Argued April 18, 1984.

Decided June 6, 1984.

Rehearing Denied July 10, 1984.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mikal Hanson, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James D. Leach, Rapid City, for defendant and appellee.

DUNN, Justice.

This is an appeal by the State of South Dakota from an order of the trial court granting a mistrial with prejudice in a first-degree murder case. We reverse and remand for a new trial.

On July 21, 1982, Clarence Tollefson was shot to death on a ridge overlooking the "Yellow Thunder Camp" in Pennington County, South Dakota. Collins Catch The Bear was arrested and charged with first-degree murder. An eyewitness to the shooting, James Lee Jones, who was granted immunity in exchange for his testimony, testified at the preliminary hearing that Catch The Bear fired the shot which killed Tollefson. Jones, an escaped federal prisoner, had been acting as chief of security at "Yellow Thunder Camp."

Venue for the trial was moved from Pennington County to Brown County, South Dakota, where a jury was empaneled and

sworn. Shortly before the state's attorney began his opening statement, a discussion was held in chambers regarding Catch The Bear's prearrest silence; the trial court granted a motion in limine which prohibited the State from discussing prearrest silence. Then, during his opening statement, the state's attorney referred to a letter which Catch The Bear had written to his sister while he was in custody awaiting trial. The letter stated, in part:

My trial should be around the middle of January. My sights for it are neither high nor are they the lowest, real hard to say at the moment. Real glad you thought to write, you lifted my spirits a good deal, I'll close for now so kiss your little one for his (bad guy) uncle ....

In commenting on the letter, the state's attorney remarked:

Further, there will be evidence to show that the Defendant is a letter writer, likes to write letters to people, to his sisters, brothers, various people. One of those letters, the evidence is going to show, at the time he wrote, the trial was in January, and now it's been continued some time and it wasn't in January, but that letter indicated to his sister his sights for the trial were neither high or low and was very hard for him to say how that trial was going to come out for him.

The evidence will show that he had a chance, talking to his sister, to deny that he had committed this crime and did not do that and—

At that point defense counsel interrupted and moved for mistrial. The next day the trial court granted the motion and dismissed the case with prejudice. More than five months later the trial court entered written findings of fact and conclusions of law in which the court found that the comment of the state's attorney "was intended to and did goad the Defendant into moving for a mistrial."

The State appealed the mistrial order, and on September 27, 1983, Catch The Bear moved to dismiss the appeal on the ground the State has no right of appeal and this court has no jurisdiction to hear the appeal. We denied the motion. Since the trial court's order dismissed the charges against Catch The Bear, this appeal is properly before us. SDCL 23A–32–4; *cf. State v. Olson,* 334 N.W.2d 49 (S.D.1983).

The sole issue on appeal is whether the trial court erred in finding that the state's attorney intended to provoke the mistrial motion. This finding is of critical importance, because if the state's attorney actually intended to provoke the mistrial motion, the State is barred by law from retrying Catch The Bear. The State readily admits that the comments made during the opening statement were an improper infringement upon Catch The Bear's constitutional rights against self-incrimination. Nevertheless, the State maintains that the record in the case fails to substantiate the trial court's finding of intentional misconduct.

 Both the federal and state constitutions protect an individual from twice being put into jeopardy for the same offense. U.S. Const.amend. V;* S.D. Const. art. VI, § 9. The courts are in agreement that jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Standing Soldier,* 299 N.W.2d 568 (S.D.1980). However, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the double jeopardy clause bars retrial. For example, the general rule is that where a defendant successfully avoids trial via his own motion for mistrial, the double jeopardy clause is not offended by a second prosecution. *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *State v. Shell,* 301 N.W.2d 669 (S.D.1981). A major exception to this rule is that a defendant may invoke

---

\* The double jeopardy clause of the Fifth Amendment has been applied to the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

the bar of double jeopardy in a second effort to try him when the State's conduct giving rise to the defendant's successful motion for mistrial was *intended* to provoke him into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

Since the trial court in this case made a specific finding that the state's attorney intentionally provoked the mistrial motion, this court must make a determination that the trial court's findings are clearly erroneous before the trial court's order can be reversed. SDCL 15–6–52(a). In making such a determination, we examine the objective facts and circumstances in the case. *Oregon v. Kennedy, supra.*

 We begin by observing that the trial court originally believed the state's attorney acted negligently rather than intentionally. On the day after the opening statement, the judge said, "It would be easy for me to find intentional misconduct, especially in light of my in limine ruling forty minutes prior to the error. *I decline to do so.*" (emphasis added) Moments later, the judge added, "I do believe Mr. Lefholz's comment constituted gross negligence." While it is certainly true that a trial court can rethink a decision from the bench, *Jones v. Jones*, 334 N.W.2d 492 (S.D.1983), as the court did here, the trial court's original, spontaneous decision provides important evidence as to the intent of the state's attorney at the time the comment was made.

Second, we note that when the state's attorney defended his statement before the trial court, he strenuously argued that there was a legal basis for his position. He claimed an associate had researched and found a doctrine called the "missed opportunity to deny guilt"; he also believed that the Fifth Amendment right against self-incrimination did not come into play when dealing with persons who were not involved in law enforcement. Despite the lack of merit in these arguments, the state's attorney actually seemed to believe in their validity.

Third, in arguments just prior to the filing of the trial court's findings of fact and conclusions of law, the state's attorney maintained his innocence of any intentional misconduct. He stated, "We, in honest good faith, believed the letter would get into evidence, and knowing such, we made an honest, good faith comment on that letter in our opening statement." Later, he added, "It was a good faith error. I didn't do it intentionally." He claimed to have practiced the opening statement before a number of attorneys, none of whom saw any problem with the statement.

In response to these arguments, Catch The Bear urges that the state's attorney had two important motives for intentionally provoking a mistrial: 1) the state's case was "crumbling"; and 2) the state's attorney was a candidate for Attorney General of South Dakota and did not want to lose an important case. As for the first claim, it is hard to believe that the case was "crumbling" when the trial had hardly begun. No evidence had been presented to the jury and no witnesses had testified; there had been no opportunity to gauge the reactions of the jurors to events at trial. While it is true that the State's main witness, James Lee Jones, had been accused of altering portions of his story at a deposition, it also remains true that Jones' testimony at the preliminary hearing still clearly pointed to Catch The Bear as the murderer. Whether or not Jones' story is true is to be determined by the trier of fact. Only after presentation of this testimony and an opportunity for defense counsel to impeach Jones can the weight of the testimony be determined. Since the trial never got past the opening statement and the jurors never heard the impeachment attempts, it is difficult to believe that the State's position was absolutely futile. As for the second claim, it is probably true that the state's attorney, as a candidate for Attorney General, sought to make a good showing in this trial. If so, it would have been completely counter-productive for him to provoke a mistrial based upon his own lack of legal knowledge. Such a result

would provide plenty of ammunition for his political opponents.

Catch The Bear further argues that the comments of the state's attorney must have been intentional since the trial court had warned him on the "same constitutional matter" within an hour of the opening statement. Actually, it was not the "same" matter; the trial court's granting of the in limine motion concerned prearrest silence; it had nothing to do with the letter in question or post-arrest silence. This certainly does not excuse the error made by the state's attorney, but neither is it an affirmative indication of his intent to provoke a mistrial.

██ It is a well-settled principle of law that the intent with which an act is done may be inferred from the nature of the act and the circumstances surrounding its commission. *See, e.g., American Communications Ass'n v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950). Here, an analysis of all the facts and circumstances preclude an inference that the state's attorney intended to provoke the mistrial; there simply is not enough weighty evidence in the record to support such a conclusion. Therefore, we find that the trial court was clearly erroneous in its finding that the mistrial was intentionally provoked.

In reaching this conclusion, we in no sense approve of the actions or comments of the state's attorney; they were clearly mistaken and prejudicial to the defendant in this case. As such, they are not to be countenanced by the courts of this jurisdiction. In this regard, however, we wish to make clear that the granting of a mistrial with prejudice is an inappropriate manner of punishing a negligent state's attorney. The primary concern of the criminal justice system is to provide a fair and proper forum for the trial of defendants accused of serious crimes such as this one. An erring state's attorney can be disciplined in ways which do not infringe upon this concern and yet guarantee a fair trial for the accused.

The order granting mistrial with prejudice is reversed and the case is remanded for a new trial.

All the Justices concur.