In the Matter of the DISCIPLINE of Robert G. MINES, as an Attorney at Law.

No. 18581.

Supreme Court of South Dakota.

ORIGINAL PROCEEDING

Argued April 26, 1994.

Decided Oct. 26, 1994.

R. James Zieser, Tyndall, for Complainant Disciplinary Bd.

Robert D. Hofer of Riter, Mayer, Hofer, Wattier & Brown, Pierre, for respondent Robert G. Mines.

McKEEVER, Circuit Judge.

This matter arises from a formal accusation filed at the direction of this Court pursuant to SDCL 16–19–67. Robert G. Mines (Mines) filed an answer and amended answer.

FACTS

Mines was admitted to the South Dakota Bar on September 13, 1972. Since that time he has been engaged in the practice of law in this state, most recently in Hot Springs.

Mines was named as defendant in O.S.T. Pub. Safety Comm'n v. Robert G. Mines. That action was initiated to recover funds obtained by Mines in another suit, *Gerald One Feather v. O.S.T. Pub. Safety Comm'n (One Feather)*. In *One Feather*, Mines obtained a judgment in the Oglala Sioux Tribal Court against the Oglala Sioux Tribe Public Safety Commission (O.S.T.) for the wrongful termination of an employment contract with

Mr. One Feather. He then sought comity for the tribal court judgment in state court. Pursuant to a favorable circuit court ruling, he executed a levy upon O.S.T. checking accounts at a Rapid City bank and received funds from those accounts. Shortly thereafter the *One Feather* suit was reversed by this Court. *See* 482 N.W.2d 48 (S.D.1992).

O.S.T. initiated a suit against Mines in tribal court to recover the money which he received from the Rapid City checking accounts. O.S.T. subsequently filed an identical suit in state court to recover the funds. A summons and complaint for the *O.S.T. Pub. Safety Comm'n v. Mines* suit (the state court action) were served upon Mines on September 11, 1992. On October 13, 1992, Mines filed a motion to dismiss the complaint which was denied by Judge Timothy Johns [1] on March 30, 1993. Because Mines had not filed an answer to the summons and complaint, O.S.T. filed a motion for default judgment on May 13, 1993. A hearing on that motion was set for July 2, 1993. On July 1, Mines sent a fax transmittal to Judge Johns stating that he had filed or was filing an action in federal court which he believed would halt the matter pending before Judge Johns. He also sent by fax a copy of the same materials to counsel for O.S.T.

Mines alleged that he intended to file the federal court action on or about July 2. Although he did not file the papers himself, he said that he directed his secretary to file the papers with the Federal District Court clerk, but he inadvertently failed to sign a check to pay the filing fee. In any event, the papers were not filed when Mines appeared before Judge Johns.

At the hearing, Mines explained to Judge Johns that the action he "filed" in federal court sought to bring the United States into the proceeding. The matter turned on a federal question; therefore, the action would be removed to federal court.[2] Mines clearly stated in open court that the federal court papers *were filed.* At the conclusion of the

hearing Judge Johns stated that he would study the removal question. Judge Johns also stated that he would allow Mines to file an answer to O.S.T.'s summons and complaint, but would impose terms upon him for O.S.T.'s expenses incurred while pursuing a default judgment. At no time did Mines interpose an answer to the summons and complaint.

After the hearing, Mines stopped briefly at his office in Hot Springs before beginning a vacation with his child. While on vacation, he phoned his office on July 6 or 7. At that time, he was told that his secretary had not filed the federal court papers because she did not have a signed check to cover the fee. Mines did not notify Judge Johns or opposing counsel that the federal action had not been filed. Likewise, he also failed to notify the Judge and counsel of this fact after returning from vacation on July 12. On July 14, opposing counsel discovered that Mines had never filed his federal case. During this time period Mines apparently decided it would be best to rid himself of the lawsuit altogether. The case was settled on July 19th. Whatever the motivation for settlement was, the fact is that Mines never filed the federal suit and failed to inform Judge Johns and opposing counsel of this fact.

The Disciplinary Board of the State Bar (Board) investigated the matter and found that the complaint lodged against Mines in this matter was meritorious. The Board found that Mines' conduct violated the South Dakota Rules of Professional Conduct (SDRPC). At the direction of this Court, the Board filed a formal accusation which alleged that Mines' conduct violated SDRPC 3.3(a)(4) and 8.4(c) and (d). Mines filed a response to the formal accusation and an amended answer after he sought the assistance of counsel.

## DECISION

 The primary concern of this Court in disciplinary proceedings is to protect the

---

1. Chief Justice Miller appointed Judge Johns to preside over the case since all of the judges of the Seventh Judicial Circuit disqualified themselves.

2. Mines explained that because a federal suit is commenced upon filing, as opposed to the state requirement of service upon the defendant, the federal suit had commenced and the matter would first have to be resolved there.

public from fraudulent, unethical or incompetent practices of attorneys. *Matter of Discipline of Wehde,* 517 N.W.2d 132 (S.D.1994). Disciplinary proceedings provide a means for protecting the public from incompetent or unscrupulous attorneys by removing such attorneys from the profession. *Id.* Nevertheless, we need not give deference to Board's recommendations for sanctions because the ultimate decision for discipline of members of the state bar rests with this Court. *Matter of Discipline of Stanton,* 446 N.W.2d 33, 46 (S.D.1989). When making a determination of the appropriate discipline for an attorney's conduct, this Court balances the aggravating and mitigating circumstances. *Matter of Discipline of Jeffries,* 500 N.W.2d 220, 226 (S.D.1993).

▮▮▮ A willful violation of any of the duties of an attorney prescribed in the SDRPC provides grounds for discipline. SDCL 16–19–33(3). SDRPC 3.3 and 8.4 impose a duty on attorneys to avoid dishonesty and to be forthright with the court. SDRPC 3.3(a)(4) states:

A lawyer shall not knowingly:

(4) offer evidence that a lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

SDRPC 8.4(c) and (d) provide:

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice; ...

Because the courts of this state must rely upon the assistance of attorneys to ascertain the truth of matters before them, attorneys must be fair and forthright with the courts. *Matter of Discipline of Schmidt,* 491 N.W.2d 754, 755 (S.D.1992).

▮▮▮ Mines' conduct clearly violated these rules. Mines may not have known that his secretary was not able to file the papers with the Federal District Court when he appeared at the default hearing before Judge Johns. However, he failed to inform the court and opposing counsel after he learned that the papers were not filed. Therefore, Mines' statements to the court with regard to the federal action definitely became false when he learned the papers had not been filed. This conduct constituted a violation of SDRPC 3.3(a)(4) and 8.4(c).

The record in this matter clearly demonstrates that Judge Johns relied upon the misrepresentations made by Mines. Nevertheless, Mines took no remedial measures to rectify the situation, including simply informing Judge Johns and opposing counsel of the fact that he had not filed the papers. By failing to take any remedial measures, Mines' conduct involved deceit, dishonesty, misrepresentation and fraud which was prejudicial to the administration of justice. This conduct violated SDRPC 3.3(a)(4) as well as 8.4(c) and (d). We therefore conclude that the factual findings of the Board, none of which were seriously disputed by Mines, are supported by the record. *See Matter of Discipline of Jeffries,* 500 N.W.2d at 225.

Mines' conduct is similar to that of at least two other cases. In *Matter of Discipline of Schmidt, supra,* this Court publicly censured an attorney for failing to disclose to the court that his brother, an out-of-state attorney, with whom Schmidt wished to associate for a trial in South Dakota had been the subject of a disciplinary action in his resident state. We found that this conduct was a violation of SDRPC 3.3 and 8.4 *Schmidt,* 491 N.W.2d at 755. In *Matter of Discipline of Rensch,* 333 N.W.2d 713 (S.D.1983), we found that an attorney's misrepresentation of his fee arrangement to the court was a violation of Canon 1 and DR 1–102(A)(4) and (5), forerunners of the rules which Mines is accused of violating. Rensch was publicly censured for his conduct. *Rensch,* 333 N.W.2d at 716.

Notwithstanding the recommendation of the Board for public censure and our decisions in *Rensch* and *Schmidt,* the decision before this Court is whether public censure is a fitting disposition to the case. Certainly, the hearing before this Court evidenced that deceit took place in this matter. Consequently, under all the circumstances of this case, we would not seriously consider any discipline less severe than public censure.

The question that faces us is which of the alternatives provided for in SDCL 16–19–35—public censure, probation, suspension or disbarment—is the appropriate sanction to apply in this case to fulfill our duty to protect the public.

In the first chapter of the Book of Wisdom it is written: "Wisdom will never be at home with anyone who is deceitful. . . ." Our citizens have a right to be assured that any person who has the privilege to practice law in this state is not only competent in the skills of the profession, but equally as important, that wisdom resides within his or her heart.

This Court has given Mines the benefit of the doubt that his original misstatement of the fact to Judge Johns was made in good faith: without any knowledge whatsoever that the federal case had not been filed. Even so there remains the disturbing reality of his continued silence after he became aware of the non-filing. The appropriate sanction for the misconduct is dependent upon the degree to which Mines recognizes his error and is repentant for it. For only if there is a full recognition and sincere repentance can there be a channel that will allow wisdom to flow to the heart. Mines realized what he did was wrong and did express regret to this Court. However, his words and demeanor did not fully evidence a complete appreciation that his silence after the discovery of the falsity of his statement to the court was just as devastating to the integrity of his profession as if he had intentionally made a misstatement in the first place. It is absolutely necessary that each member of the bar comprehends the great responsibility that every person who has the privilege to practice law must strive for: to be a person of unquestionable integrity as he or she deals with the rights of people before the bar. A practitioner of the legal profession does not have the liberty to flirt with the idea that the end justifies the means, or any other rationalization that would excuse less than complete honesty in the practice of the profession. Certainly our Rules of Professional Conduct allow no such flirtation. INTEGRITY! INTEGRITY! INTEGRITY! It must be in the hearts of the members of our bar if our profession is going to continue to be a force in preserving the freedoms and constitutional rights of our citizens that have been established by those who preceded us often with the ultimate sacrifice, their lives. If an attorney allows pride or greed or any other human weakness to destroy his or her ability to be anything less than truthful and forthright in the practicing of the profession, then the profession will suffer and it is questionable whether this nation that was founded on the principle of liberty and justice for all can survive.

So the questions remains: what is the appropriate sanction for this Court to impose under the circumstances of this case to fulfill this Court's responsibility to protect the public?

The Board has recommended that the appropriate sanction in a case of this nature is public censure. This Court does not take the recommendation of the Board lightly, even though we must reserve to ourselves the final determination as to what the appropriate sanction shall be. The circumstances of the record of this case are similar to *Rensch* and *Schmidt* cases, *supra*. Furthermore, Mines did express regret for the wrongdoing, even though he attempted to minimize and distinguish his silence as being less grievous because he originally thought his statement was true. Public censure in this type of case has been the penalty of the past, but whether it will be in the future is debatable and the whole Bar should take note of this.

Therefore, it is the determination of the Court in this particular case that public censure shall be assessed, which will require the following:

1) Publication of this opinion in the same manner as all other like opinions of this Court are published;

2) Submission of an affidavit addressed to this Court within 30 days from the date of this opinion by Mines where he states under oath that: a) he has reviewed the Rules of Professional Conduct; b) he recognizes fully that his conduct (in remaining silent and not apprising opposing counsel and the court that his statement that he had filed the federal case was false) violated the Rules of Professional Conduct by

which he is bound; c) he is sincerely sorry for any damage he has done to the profession, along with a copy of letters of apology to the circuit judge and the opposing counsel involved in the case; and d) he make a pledge within his affidavit that he will devote every effort in his future practice to fully abide by the South Dakota Rules of Professional Conduct; and

3) Payment to the Clerk of this Court of the expenses of these proceedings within 30 days of the date that he is notified of the amount thereof.

In the event Mines cannot comply with any of the above conditions within the time period specified, then an order will be issued disbarring him from the practice of law in this state until further order of the Court.

WUEST, and AMUNDSON, JJ., concur.

SABERS, J., concurs in result.

MILLER, C.J., concurs in part and dissents in part.

McKEEVER, Circuit Judge, for HENDERSON, Retired Justice, who was a member of the Court at the time this action was submitted.

KONENKAMP, J., not having been a member of the Court at the time this action was submitted, did not participate.

SABERS, Justice (concurring in result).

I concur in the result on the basis that attorney Mines violated South Dakota Rules of Professional Conduct 3.3(a)(4) and 8.4(c) and (d). Whether his conduct is also in violation of the Book of Wisdom is not an issue in this case and may or may not be answered by a higher authority.

MILLER, Chief Justice (concurring in part and dissenting in part).

Considering the seriousness of the ethical violations of Mr. Mines, I would suspend him from the practice of law for no less than sixty days.