1997 SD 50

**MID–CENTURY INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**Honorable Darla L. LYON, Director, South Dakota Division of Insurance, Defendant and Appellee.**

No. 19734.

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided April 30, 1997.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for plaintiff and appellant.

Mark Barnett, Atty. Gen., Timothy E. Reilly, Asst. Atty. Gen., Division of Insurance, Pierre, for defendant and appellee.

Douglas M. Deibert of Cadwell, Sanford, Deibert & Garry, Sioux Falls, for Amicus Curiae American Standard Ins. Co. of Wisconsin.

KONENKAMP, Justice.

[¶ 1.] We are confronted with the question whether a restrictive endorsement must be on a separate sheet or if it can be included within the body of an automobile insurance policy. Based upon statutory language and industry usage, we conclude such an endorsement must be on a separate page added or attached to the policy. Accordingly, we uphold a declaratory judgment in favor of the South Dakota Division of Insurance in its interpretation of SDCL 58–11–9.3.

### Facts

[¶ 2.] On June 5, 1991, Carl Benedict was driving a vehicle with permission of the owner, who was insured by Mid–Century Insurance Company. Benedict collided with Re-

becca Waack and was cited for failure to yield—circumstances giving rise to a claim against Benedict. Mid–Century's policy carried a bodily injury liability limit of $50,000 per person and $100,000 per accident; however, it asserted that only the financial responsibility statutory limit of $25,000 applied in this instance. It relied upon the following language in its E–Z Reader Car Policy:

> We will not provide insurance for a person, other than you or a family member, if that person has other insurance applicable to a loss covered by this part with limits equal to at least those of the South Dakota Financial Responsibility Law. If there is no other insurance then the insurance provided to that person will be limited to the requirements of the South Dakota Financial Responsibility Law.

This provision, commonly known as a "step-down clause," was brought to the Division's attention, and it ruled the clause invalid, requiring Mid–Century to make its full policy limits available.

[¶ 3.] Based upon the following statute, the Division reasoned a restrictive endorsement must appear on a separate page, apart from the main policy language:

> An insurance policy covering a private passenger automobile or other motor vehicle registered or principally garaged in this state may by written agreement with the named insured exclude a named individual from coverage. The policy may also contain a restrictive endorsement reducing the limits of liability or collision coverage when the vehicle is operated by a named person or class of persons. However, if the policy does not provide liability coverage to a person or persons named in the restrictive endorsement, the liability coverage may not be less than the minimum prescribed by chapter 32–35.

SDCL 58–11–9.3 (1996).[1]  In a declaratory judgment action, the circuit court concurred with the Division, noting ambiguity in the

---

1. This statute was amended in 1994, to add punctuation, but it does not appear to alter our

interpretation in this case.  The pre–1994 SDCL 58–11–9.3 provided:

statute and finding the legislative intent in using the words "restrictive endorsement" required additional disclosure. Mid–Century appeals, contending the trial court erred in ruling its step-down clause invalid.[2]

## Standard of Review

[¶ 4.] We review declaratory judgments as we would any other order, judgment, or decree. SDCL 21–24–13; *Schull Constr. Co. v. Koenig,* 80 S.D. 224, 228–29, 121 N.W.2d 559, 561–62 (1963). A trial court's findings of fact are examined under a clearly erroneous standard and its conclusions of law under a de novo standard. *Northwestern Bell Tel. Co., Inc. v. Stofferahn,* 461 N.W.2d 129, 134 (S.D.1990). Insurance contract interpretation, as well as statutory construction, are questions of law, reviewable de novo. *National Farmers v. Universal,* 534 N.W.2d 63, 64 (S.D.1995); *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994).

## Analysis and Decision

[¶ 5.] The Division maintains that the use of the term "restrictive endorsement" in the second sentence of SDCL 58–11–9.3 means, in accordance with common industry usage, the endorsement must be on a separate page or piece of paper apart from the body of the policy.[3] It argues the Legislature's use of such words would be surplusage if, in fact, a restrictive endorsement may abide within the body of the policy. *See* SDCL 58–11–9.3: "The policy may also contain a restrictive endorsement reducing the limits of liability

> An insurance policy covering a private passenger automobile or other mobile vehicle registered or principally garaged in this state may by written agreement with the named insured exclude a named individual from coverage or contain a restrictive endorsement reducing the limits of liability or collision coverage when the vehicle is operated by a named person or class of persons, provided, however, that the liability coverage may not be less than the minimum prescribed by chapter 32–35 as amended.
> SDCL 58–11–9.3 (1971).

2. An amicus curiae brief was filed by American Standard Insurance Company of Wisconsin. Al-

or collision coverage when the vehicle is operated by a named person or class of persons."

[¶ 6.] Our insurance code, SDCL tit 58, gives no definition of "restrictive endorsement." Legal treatises and encyclopedias uniformly suggest, however, endorsements of any type in an insurance context are attached to policies and are not part of the policy proper. For instance, a leading treatise on the subject states, "Insurers often seek to change the rights of parties under an existing insurance policy by issuing 'riders' or endorsements that are *designed to be attached to the original insurance policy provisions* which were previously sent or delivered to an insured." Keeton & Widiss, *Insurance Law* § 6.10(d) (1988)(emphasis added). *See also* 2 Couch *Cyclopedia of Insurance Law* 3d § 18:17 (1996)("A rider or endorsement is a writing added or attached to a policy ... which expands or restricts its benefits or excludes certain conditions from coverage."); 44 CJS *Insurance* § 302 (1993)("A policy of insurance must have endorsed thereon, or attached thereto, such papers and documents as the statutes may require."); 39 CalJur *Insurance Contracts* § 48 (1996)("An indorsement on an insurance policy, or, as it is sometimes called, a 'rider,' forms part of the insurance contract, if properly attached, and is to be construed as if set forth in the body of the policy."); 13A Appleman, *Insurance Law and Practice* § 7537 (1976)("The insurance contract includes the printed form policy, declarations therein, and any endorsements thereto. Provisions of the policy and an endorsement thereon are to be read together....").

though the Court allowed the brief to be filed pursuant to SDCL 15–26A–74, we believe, upon further reflection, the issues are sufficiently addressed by appellant and appellee, so we disregard the arguments advanced in the amicus materials.

3. We have previously considered SDCL 58–11–9.3 in two cases; however, we have yet to address the issue at hand. *National Farmers v. Universal,* 534 N.W.2d 63 (S.D.1995); *American Family Mutual Insurance Co. v. Merrill,* 454 N.W.2d 555 (S.D.1990).

[¶ 7.] Mid–Century directs us to cases from other jurisdictions which refer to an endorsement as something contained within the body of a policy. Upon close review, however, these cases are not profitable to Mid–Century's assertion. In *Givens v. Aetna Life Ins. Co.*, 59 S.W.2d 761 (Mo.Ct.App.1933), a Missouri court of appeals considered a stamped endorsement. It held this arrangement did not prohibit the application of the endorsement to coverage as it was clearly stamped on the margin, writing:

> It is not hidden away, in small type, amongst a mass of rubbish, on the back side of the policy, so that it would not arrest the attention of the insured; it is printed on the face of the policy, in large honest type, and is the most conspicuous provision in the policy.

*Id.* at 764. Stamped endorsements are quite different from endorsements printed as part of the body of a policy, because, as the court noted, they draw an insured's attention to the limitations they impose. While we pass no judgment on the merits of such a configuration, we acknowledge such a stamp has the same obvious and distinct characteristics as a restrictive endorsement by separate attachment, alerting the reader coverage has been altered.

[¶ 8.] Similarly, Mid–Century cites *Loubat v. Audubon Life Insurance Company* for the rule that a rider or endorsement may become part of the policy if "sufficiently attached or referred to therein, or if made part of the body of the instrument...." 248 La. 183, 177 So.2d 281, 285 (1965)(quoting 29 AmJur *Insurance* § 268 at 654–55). Two points render this quote unconvincing. First, that case concerned the validity of an independent "Statement of Insurance Protection," later advanced as an amendment to the policy, not the issue we consider here. Secondly, the full American Jurisprudence quote from that case states an endorsement, "in order that it

may be considered a part of the insurance contract, ... must be incorporated, attached or referred to in the instrument in so clear a manner as to leave no doubt of the intention of the parties in such respect." *Id.* Attached endorsements or riders, of course, must be fully incorporated to ensure proper construction. *Id.* This authority supports the Division's position that a restrictive endorsement is generally regarded as an attachment to a policy, so arranged to put the insured on notice coverage is reduced.

[¶ 9.] Given the industry usage for this term, we must determine whether the Legislature intended such use when inserting the words "restrictive endorsement" in the second sentence of SDCL 58–11–9.3. "In arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning." *National Farmers v. Universal*, 534 N.W.2d at 65; *Weger v. Pennington County*, 534 N.W.2d 854, 856 (S.D.1995); *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 183–84 (S.D.1986). "This court assumes that statutes mean what they say and that legislators have said what they meant." *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984). "When the language of the statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *Id.* The term "restrictive endorsement" carries a meaningful connotation in the insurance industry, and perhaps in common parlance, as well. This terminology signals to insureds coverage is different from the boilerplate, printed language in the policy. Insureds, of course, seek to maintain coverage. We believe the Legislature, with this in mind, intended an extra measure of disclosure, contemplating by the use of this language that restrictive endorsements would be positioned in a separate, prominent place.[4] *See Farmland Ins.*

---

4. Limits to coverage, whether in exclusions, limitations, riders, or endorsements, should be set forth clearly and explicitly. *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993); *Jaramillo v. Mercury Ins. Co.*, 242 Neb. 223, 494 N.W.2d 335, 340 (1993)(construing California law); *Emcasco Ins. Co. v. L & M Development, Inc.*, 372 N.W.2d 908, 911 (N.D.1985). If

*Companies v. Heitmann*, 498 N.W.2d 620, 623 (S.D.1993)(when determining legislative intent, "statutory purpose" is a relevant concern). We presume the Legislature does not insert surplusage into its enactments. *National Farmers*, 534 N.W.2d at 65 (citing *Revier v. School Bd. of Sioux Falls*, 300 N.W.2d 55, 57 (S.D.1980)); 2A Sutherland, *Statutes and Statutory Construction* § 46.06, at 119–120 (5th ed 1992).

■ [¶ 10.] In sum, the Legislature intended the common meaning of "restrictive endorsement" so as to mandate clear emphasis on policy limitations. *See* 2A Sutherland, *supra*, § 46.01 at 83 ("The words [in a statute] should be given their common and approved usage."). Though Mid–Century argues this reasoning elevates form over substance, we are bound to recognize the Legislature's public policy goals of fairness and disclosure in the insurance industry. *See Nat. Union Fire Ins. v. Continental Illinois Corp.*, 643 F.Supp. 1434, 1439 (N.D.Ill.1986)(insurance companies rarely bargain with the insured for contract specifications, so they should gain no advantage from ambiguity). Regulating the use of one insurance form over another to effectuate those policy goals is a legitimate government exercise. *See* 2A Sutherland, *supra*, § 45.09 at 42–44 (recommending consideration of legislative public policy and purpose in statutory construction); *see also De Smet Ins. Co. of South Dakota v. Gibson*, 1996 SD 102,

¶ 7, 552 N.W.2d 98, 100 ("[T]he cardinal purpose of statutory construction—ascertaining legislative intent—ought not be limited to simply reading a statute's bare language; we must also reflect upon the purpose of the enactment, the matter sought to be corrected and the goal to be attained."). The challenged language in Mid–Century's policy is violative of the statute and is thus invalid. "Where there is a conflict between a provision of an insurance policy and the law, the law must prevail." 13A Appleman, *supra*, § 7521 (1976 & 1996 Supp). *See also Heitmann*, 498 N.W.2d at 623 (conditions in an insurance contract repugnant to statutes are invalid).[5]

■ [¶ 11.] Finally, Mid–Century asserts it was deprived of due process, as the Division approved the same contract in question in 1985. This due process argument may have been waived as it does not appear in the portions of the record we were provided. *Hawkins v. Peterson*, 474 N.W.2d 90, 95 (S.D.1991); *Anderson v. Johnson*, 441 N.W.2d 675, 677 (S.D.1989). Nonetheless, examining the merits, we conclude the Director of the Division of Insurance, while empowered to approve policy forms, is not authorized to "contravene the statutes of the state simply by approving a particular policy provision." *Leuning v. Dornberger Ins., Inc.*, 250 N.W.2d 675, 678 (S.D.1977). A Pennsylvania court's comments are instructive:

policy language is ambiguous, the insurer bears the risk. *Aetna Insurance Co. v. Labor*, 85 S.D. 192, 195, 179 N.W.2d 271, 273 (1970). This common mode of insurance contract construction supports the notion that the Legislature specifically intended in using the term "restrictive endorsement" to promote further disclosure for modified coverage. Such interpretation also conforms with our well-settled method of considering insurance coverage questions. *Olson v. United States Fidelity & Guar. Co.*, 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200 (quoting *Rogers v. Allied Mutual Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994)); *Prokop v. North Star Mutual Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990); *American Family Mutual Ins. Co. v. Merrill*, 454 N.W.2d 555, 559 (S.D.1990)(construing SDCL 58–11–9.3); *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978). *See also Southern Guar. Ins. Co. v. Union Timber Co.*, 741 F.Supp. 223, 225

(M.D.Ga.1990)(asking as a threshold question whether the exclusion in the policy unfairly exposed the insured to liability).

5. Mid–Century believes the general exclusionary language on the index page of the policy is enough to alert insureds to the restrictive endorsement. It states, "This policy is a legal contract between you (the policyholder) and us (the Company). IT CONTAINS CERTAIN EXCLUSIONS. READ YOUR POLICY CAREFULLY." We disagree. The Legislature required that a restrictive endorsement, by common and ordinary definition, be separate from the policy body. This certainly mandates a higher degree of disclosure than the nonspecific, boilerplate warning language Mid–Century advances to salvage its step-down clause.

[Insurer's reliance on the Insurance Commissioner's approval of the exclusionary clause] does not per se establish the validity of this provision despite the requirement that the forms must be approved before they can be used. (Citation omitted). A court can determine that a challenged clause is void as being contrary to law, which then invalidates the approval as well.

*Insurance Co. of North America v. Hippert,* 354 Pa.Super. 333, 511 A.2d 1365, 1367 (1986). The Division's 1985 acceptance of the policy and the later invalidation is not a deprivation outside the bounds of the insurance code. SDCL 58–11–21 provides the Division may withdraw any previous approval of a form for one of four reasons, the first of which is "if the form ... [i]s in any respect in violation of or does not comply with this title." SDCL 58–11–21(1).

[¶ 12.] Mid–Century participated in the declaratory judgment action with a full opportunity to challenge the Division's position; therefore, it had notice and an opportunity to be heard. No due process violation is evident, and we uphold the decision of the circuit court in all respects.

[¶ 13.] Affirmed.

[¶ 14.] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

