1998 SD 116

Karen ECCLESTON, Plaintiff
and Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant
and Appellee.

Nos. 20253, 20363.

Supreme Court of South Dakota.

Considered on Briefs Sept. 16, 1998.

Decided Dec. 2, 1998.

Michael Abourezk, Rapid City, for plaintiff and appellant.

Curt Ireland, Rapid City, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Karen Eccleston appeals an order denying her motion for costs and attorney fees and an order requiring her to pay State Farm's costs. We affirm in part, reverse and remand in part.

## FACTS

[¶ 2.] This case arose from a car accident involving Karen Eccleston and Brian Drexler which occurred on October 10, 1992. Following the accident, Eccleston began having back and neck pain. She incurred over $7,000 in medical expenses.

[¶ 3.] Eccleston sued Drexler. State Farm, Eccleston's underinsurance carrier, intervened and counterclaimed for its subrogation interest for medical payments. Eccleston eventually settled with Drexler's insurance company, American Family, for the policy limit of $25,000 and Drexler was dismissed from the lawsuit.

[¶ 4.] The first trial between Eccleston and State Farm for underinsurance coverage resulted in a mistrial requiring a second trial.

[¶ 5.] The first trial was scheduled for October 15–17, 1996, but was rescheduled to April 8, 1997 because the parties were uncertain whether it would be concluded in three days. The rescheduling required Eccleston to make an additional trip to South Dakota from Norway, where she moved following the accident.

[¶ 6.] In the first trial, Eccleston requested the identity of all expert witnesses State Farm intended to call, including their opinions and supporting data. Initially, State Farm provided a curriculum vitae for Dr. Scott, an expert from Biodynamic Research Corporation (Biodynamics), his testifying history for the past two years, a billing schedule, and copies of correspondences and his notes. On March 26, 1997, Eccleston filed a motion in limine to exclude Dr. Scott's testimony based on lack of foundation. She claims it was only at that time that State Farm provided additional discovery regarding Dr. Scott.

[¶ 7.] Eccleston also requested copies of any photographs in the possession of State Farm. State Farm stated in its answers to interrogatories dated June 24, 1996 that it did not have any photographs. At a pretrial conference on March 10, 1997, State Farm revealed it had two photos of Eccleston's car and three of Drexler's car. State Farm filed a supplemental answer on March 31, 1997 stating it recently acquired the photographs.

[¶ 8.] Eccleston initially requested information about the number of times State Farm paid Biodynamics for expert testimony in South Dakota cases. State Farm provided information on 12 cases in South Dakota and claimed that the information came from Biodynamics as State Farm did not keep a record of that information. State Farm later acknowledged that the information came from its own records.

[¶ 9.] Ten days before trial, Eccleston broadened the discovery request through a subpoena duces tecum to include nationwide information regarding State Farm's use of Biodynamics. State Farm moved to quash the subpoena claiming the request was too broad and that it would take hundreds of hours to compile the requested information.

[¶ 10.] Before voir dire, the trial court heard testimony from Michael Fergen, State Farm claims superintendent, regarding the impracticability of obtaining the information. The judge quashed the subpoena, but ordered Fergen to phone State Farm's legal department to see whether the information was available. On the second day of trial, it was revealed that Eccleston's attorney had al-

ready obtained the requested information from a plaintiff's attorney in an unrelated case with State Farm. The trial court and State Farm were unaware that Eccleston's attorney already possessed the information being sought. The information showed that State Farm had paid $7.5 million to Biodynamics between 1990–1995.

[¶ 11.] The trial court granted two motions in limine. First, the court ordered that Eccleston's prior settlement with Drexler not be mentioned. Instead, the jury was to be told that there was "inadequate insurance." The second motion involved the testimony of Dr. Scott. The court ruled he could not testify about Eccleston's injuries. It reserved a final ruling whether Dr. Scott could testify regarding force of impact until an offer of proof was made and ordered that no mention of Dr. Scott's testimony be made until such time.

[¶ 12.] In its opening statement on April 8, 1997, State Farm said Eccleston had been fully compensated by the insurance coverage available on Drexler's car. Eccleston objected and the jury was removed from the courtroom. State Farm argued that Eccleston had opened the door in her opening statement by stating she had paid her premiums relying on State Farm to be there when she needed coverage and State Farm had not been there for her. The court refused to order a mistrial and told both sides to stay away from the settlement issue. State Farm then told the jury in its opening statement that an engineer would testify about force of impact.

[¶ 13.] On the second day of trial on April 9, Eccleston asked the trial court to bar Dr. Scott from testifying and impose sanctions on State Farm. The court offered to grant Eccleston a mistrial and order State Farm to pay $3,000 of her expenses and a ticket back to Norway. Eccleston wanted the court to order State Farm to pay her trial costs and attorney fees. The court refused and then denied the motion for mistrial and sanctions. The court ruled that Dr. Scott would not be allowed to testify because the probative value of his testimony would be outweighed by the prejudice.

[¶ 14.] On the third day of trial on April 10, Eccleston entered into evidence a videotaped deposition of Tor Tovsland, Eccleston's husband. State Farm had possession of the tape because it had taken the deposition and was responsible for editing the tape to comply with pretrial rulings on objections. In the presence of the jury, State Farm announced that the tape was marked as a defense exhibit because it had been taken by State Farm and that the tape had been edited because of objections. Eccleston played the tape for the jury and discovered that the tape had not been completely edited. The tape contained objections and comments made by counsel, including comments made by State Farm about a claim for lost wages that Eccleston was not seeking at trial.

[¶ 15.] Eccleston renewed her motion for a mistrial. State Farm supported the motion because it believed its own case was also prejudiced. In the interests of justice, the trial court granted the motion for mistrial, even though the violation of the order in limine was unintentional. Eccleston was asked to present her costs to the court for consideration.

[¶ 16.] Following a post-trial hearing, the court did not order State Farm to pay Eccleston's costs and attorney fees of $17,608.04 under SDCL 15–17–16.1 because it determined State Farm had acted recklessly, not intentionally, in causing the mistrial. The court stated in its findings of fact and conclusions of law that State Farm's comments about Dr. Scott and the unedited videotape "substantially contributed" to the granting of the mistrial. The court found that SDCL 15–17–44 did not provide supplemental authority for imposing costs, but, instead, was a companion to SDCL 15–17–37 which applies to prevailing parties. The court concluded it was not authorized by law to grant Eccleston's motion for costs and attorney fees.

[¶ 17.] A second trial, on June 16, 1997, resulted in a verdict for Eccleston of $15,039.36, but the trial court entered a judgment for a zero amount because the verdict was less than the $25,000 Eccleston received from Drexler's insurance company.

[¶ 18.] On October 1, 1997, the court entered judgment against Eccleston for State Farm's

subrogation counterclaim of $3,919.28. The amount was offset for State Farm's prorata share of the costs and attorney fees expended in obtaining the settlement with Drexler.

[¶ 19.] On December 24, 1997, the court ordered Eccleston to pay State Farm's costs of $2,440.98 under SDCL 15–6–68 because State Farm had made an offer of judgment of $500 and a waiver of its subrogation interest and costs accrued, and Eccleston's subsequent recovery was less than the offer of judgment.

## STANDARD OF REVIEW

[¶ 20.] We review a trial court's ruling on the allowance or disallowance of costs and attorney fees under an abuse of discretion standard. *Fullmer v. State Farm Insurance Co.*, 498 N.W.2d 357, 363 (S.D.1993). "The award of costs in civil actions is discretionary with the court unless otherwise stated by law." *Id.* (citations omitted). Conclusions of law are reviewed de novo and are given no deference on appeal. *Harding County v. South Dakota State Land Users Ass'n*, 486 N.W.2d 263, 264 (S.D.1992) (citing *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1992)).

[¶ 21.] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND THAT STATE FARM INTENTIONALLY CAUSED A MISTRIAL AND IN DENYING ECCLESTON JURY COSTS AND ATTORNEY FEES UNDER SDCL 15–17–16.1.**

[¶ 22.] SDCL 15–17–16.1 states:

When a motion for mistrial is made successfully in any civil action, the court may impose against the party intentionally causing the mistrial the jury costs and attorneys' fees together with such other costs as may be appropriate.

The trial court found that State Farm acted recklessly in violating the court's prohibition regarding Dr. Scott and failing to properly edit the videotaped deposition. The trial court found insufficient evidence to conclude State Farm acted with the intent necessary for imposing costs and attorney fees under SDCL 15–17.16.1.

[¶ 23.] The trial court viewed State Farm's conduct and was in the best position to evaluate whether the conduct was intentional. "It is a well-settled principle of law that the intent with which an act is done may be inferred from the nature of the act and the circumstances surrounding its commission." *State v. Catch The Bear*, 352 N.W.2d 637, 640 (S.D.1984). At the time the conduct occurred, the trial court viewed it as unintentional and granted the mistrial because both sides appeared to have been deprived of a fair trial. *See id.* at 639 (stating that "the trial court's original, spontaneous decision provides important evidence as to ... intent").

[¶ 24.] Eccleston made no showing that the trial court abused its discretion in holding that State Farm did not intentionally cause the mistrial and, therefore, we affirm.

[¶ 25.] **2. WHETHER "RECKLESS" MISCONDUCT CONSTITUTES "INTENTIONAL" MISCONDUCT UNDER SDCL 15–17–16.1.**

[¶ 26.] Eccleston asserts that the trial court's finding of reckless conduct by State Farm is sufficient to allow costs and attorney fees under SDCL 15–17–16.1. We have clearly established the rules of statutory construction:

Questions of law such as statutory interpretation are reviewed by the Court de novo.... The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent; the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature

did not intend an absurd or unreasonable result. When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute.

*Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17) (citations omitted). "In arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning." *Mid–Century Ins. Co. v. Lyon,* 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (quoting *National Farmers v. Universal,* 534 N.W.2d 63, 65 (S.D.1995)); *Weger v. Pennington County,* 534 N.W.2d 854, 856 (S.D.1995); *Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180, 183–84 (S.D.1986).

[¶ 27.] The language of SDCL 15–17–16.1 is clear. It states that "the court may impose [costs] against the party *intentionally* causing the mistrial . . . ." SDCL 15–17–16.1 (emphasis added). "This court assumes that statutes mean what they say and that legislators have said what they meant." *Mid–Century Ins. Co.,* 1997 SD 50 at ¶ 9, 562 N.W.2d at 891 (quoting *In Matter Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984)). "When the language of the statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *Id.* The statute explicitly requires a finding of intentional conduct. Therefore, reckless conduct is insufficient to satisfy the intentional requirement of SDCL 15–17–16.1.

[¶ 28.] **3. WHETHER THE TRIAL COURT HAD AUTHORITY TO AWARD COSTS TO ECCLESTON AND IF SO, DID IT ABUSE ITS DISCRETION IN DENYING SAME.**

[¶ 29.] Eccleston asserts that the trial court erred by concluding it was not authorized by

law to grant her motion for costs. She argues that the trial court should have ordered State Farm to pay her costs under SDCL 15–17–54. SDCL 15–17–54 states: "If a new trial is granted, the prevailing party may tax his disbursements as if he would have prevailed at the trial."

[¶ 30.] A mistrial necessitates the granting of a new trial. *See* SDCL 15–6–59(a).* We agree with Eccleston that SDCL 15–17–16.1 gives the trial court supplemental authority to grant jury costs and attorney fees when a mistrial is intentionally caused by a party and does not preclude the taxation of disbursements under other statutory provisions, including SDCL 15–17–54.

[¶ 31.] The trial court erred in concluding it was not authorized by law to grant Eccleston's request for costs. SDCL 15–17–54 states that the prevailing party in a motion for new trial may tax his disbursements. Eccleston made a motion for mistrial which was granted by the trial court. This necessarily resulted in the a new trial for Eccleston and the trial court should have allowed Eccleston to tax her disbursements. SDCL 15–17–54 provides the trial court no discretion in granting or denying the taxation of costs. The statute provides the option to tax disbursements to the party prevailing on the motion for mistrial, not to the judge. Therefore, we reverse this issue and remand to the trial court to determine the amount of costs to the date of mistrial that Eccleston is entitled to under SDCL 15–17–54.

[¶ 32.] **4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ALLOWING FURTHER DISCOVERY TO PROVE INTENTIONAL MISCONDUCT.**

[¶ 33.] Eccleston claims the court abused its discretion when it refused to permit further discovery concerning whether State Farm had specific knowledge regarding the amount of money paid to Biodynamics. "We review the trial court's rulings on discovery

---

* SDCL 15–6–59(a) states, in pertinent part:
 A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

 (1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial[.]

matters under an abuse of discretion standard." *Maynard v. Heeren,* 1997 SD 60, ¶ 5, 563 N.W.2d 830, 833 (citations omitted). " '[T]he extent of discovery permitted by either side rests in the discretion of the court" ' *State v. Erickson,* 525 N.W.2d 703, 711 (S.D.1994) (alterations in original) (citations omitted). Eccleston has not shown the trial court abused its discretion and we affirm.

[¶ 34.] **5. WHETHER ECCLESTON OBTAINED A MORE FAVORABLE RECOVERY THAN STATE FARM'S OFFER OF JUDGMENT SO THAT SHE IS NOT RESPONSIBLE FOR ITS COSTS UNDER SDCL 15-6-68.**

■ [¶ 35.] After the $15,039.36 verdict in the second trial, Eccleston was ordered to pay State Farm's costs under SDCL 15-6-68. SDCL 15-6-68 states, in part:

> At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Prior to trial, State Farm made an offer of judgment of $500, a waiver of its subrogation interest in the amount of $5,165.44 and her costs accrued to date in an unknown amount. Eccleston rejected that offer.

[¶ 36.] Eccleston claims that if the court had awarded her costs and attorney fees from the mistrial, that amount would have been included in determining whether she obtained a judgment more favorable than the offer of judgment. We agree with Eccleston as to costs, but not as to attorney fees.

[¶ 37.] As discussed above in ¶ 31, we hold that Eccleston was entitled to taxation of her costs of the first trial to the date of mistrial under SDCL 15-17-54. That amount is presently undetermined. It appears unlikely Eccleston's costs are sufficient to change the trial court's order regarding payment of State Farm's costs. However, on remand, the trial court must first determine the amount of costs Eccleston will be allowed under SDCL 15-17-54 and then redetermine whether she obtained a more favorable judgment than State Farm's offer of judgment.

[¶ 38.] We affirm issues 1, 2, and 4 and reverse issue 3. We remand for determination of Eccleston's costs under SDCL 15-17-54 and redetermination of whether she obtained a more favorable judgment than the offer of judgment.

[¶ 39.] AMUNDSON and KONENKAMP, Justices, concur.

[¶ 40.] MILLER, Chief Justice, and GILBERTSON, Justice, dissent.

MILLER, Chief Justice (dissenting).

[¶ 41.] I write specially to express my disagreement with the trial court's finding that attorney Ireland acted recklessly in regard to the court's orders. It is obvious from the record, and the course of conduct displayed by Ireland, that his conduct went beyond reckless; it was clearly intentional.

[¶ 42.] The record is replete with instances of Ireland's on-going course of intentional conduct, beginning during the discovery process and continuing until the trial court declared a mistrial. Prior to trial, Ireland/State Farm denied possessing any photographs of the vehicles involved in the accident; nine months later such photographs were produced. Next, Ireland claimed Biodynamics, and not State Farm, had provided the information concerning the number of times Biodynamics was paid for its testimony in South Dakota cases. However, the evidence produced at trial established that this statement was not correct. The information had come from State Farm, not Biodynamics. Also, prior to trial, Ireland claimed "it would take hundreds of hours of research" and would be impossible to obtain information regarding the number of times State Farm hired and paid Biodynamics for its testimony in cases throughout the United States. Again, Ireland's statement was shown to be incorrect. When, on the second day of trial, it was revealed Eccleston possessed this information, State Farm/Ire-

land admitted this information could be produced. (And it must be reiterated that each time the majority refers to questionable conduct in ¶¶ 7, 12, 14, 15 and 16, it is not referring to conduct of the company, but rather actions of its counsel, Mr. Ireland. In that context, State Farm and Ireland are synonymous.)

[¶ 43.] Moreover, Ireland's intentional conduct continued throughout the trial. During Ireland's opening statement, he twice violated the court's order by relating prohibited information to the jury. In addition, he stated in open court that he had possession of the videotape of Tor Tovsland, Eccleston's husband, and that he had edited it in compliance with the court's rulings on certain objections. However, when the tape was shown, it was clear it had not been completely edited. Because it was not properly edited, the jury heard and saw, what the trial court termed, "irrelevant and prejudicial discussions between attorneys at the deposition about one of [Eccleston's] initial claims that had since been dropped." It is also important to note that at the time the mistrial was granted, Ireland had "run out" of witnesses, a further indication that his conduct was intentional.

[¶ 44.] In addition, the court had before it information of Ireland's conduct in another proceeding, which took place during the pendency of this case. In that case, the court determined that Ireland, in representing State Farm, had made misrepresentations to the court. However, the court was unable to determine if the misrepresentations were intentional, so it denied the request to enter sanctions.

[¶ 45.] As more indicia of a pattern of Ireland's conduct, I point to another case involving State Farm where he was the attorney, and where pretrial procedures were ignored. In *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 762 (S.D.1994), the trial court denied State Farm's offer of proof concerning lack of damage to the vehicle driven by State Farm's insured. State Farm/Ireland offered this proposed evidence less than three days prior to trial, even though the court required disclosure of this information two days before the pretrial con-

ference. The pretrial conference was held on March 19, 1993; State Farm/Ireland possessed the evidence as early as March 5, 1993. The trial court held that State Farm had a duty to update its interrogatories and discovery. This Court found the trial court did not abuse its discretion in making such a ruling. *Id.*

[¶ 46.] In addition to being advocates for their clients, lawyers have an awesome and unique ethical and professional responsibility to the court. Litigation is not a game. Lawyers, quite appropriately, are governed by significant and important rules of professional conduct. I particularly refer to the following:

Rule 3.3    Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

> (1) make a false statement of material fact or law to a tribunal;

> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

> \*    \*    \*    \*    \*    \*

> (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Rule 3.4    Fairness to Opposing Party and Counsel

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally

proper discovery request by an opposing party;

(e) at trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence[.]

Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct . . .

  *   *   *   *   *   *

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

[¶ 47.] As this Court has held, "[b]ecause the courts of this state must rely upon the assistance of attorneys to ascertain the truth of matters before them, attorneys must be fair and forthright with the courts." *Matter of Discipline of Mines*, 523 N.W.2d 424, 426 (S.D.1994) (citing *Matter of Discipline of Schmidt*, 491 N.W.2d 754, 755 (S.D.1992)); *see* SDCL 16–18–19. "It is absolutely necessary that each member of the bar comprehends the great responsibility that every person who has the privilege to practice law must strive for: to be a person of unquestionable integrity as he or she deals with the rights of people before the bar." *Mines*, 523 N.W.2d at 427. Further, "[a] practitioner of the legal profession does not have the liberty to flirt with the idea that the end justifies the means, or any other rationalization that would excuse less than complete honesty in the practice of the profession." *Id.* It is essential that "candor and fairness . . . characterize the conduct of an attorney at the beginning, during, and at the close of litigation." *Schmidt*, 491 N.W.2d at 755.

[¶ 48.] The trial court said that Ireland was reckless. I disagree and would hold that he acted intentionally. "It is a well-settled principle of law that the intent with which an act is done may be inferred from the nature of the act and the circumstances surrounding its commission." *State v. Catch the Bear*, 352 N.W.2d 637, 640 (S.D.1984). Further, "[t]he actor must know or believe that harm is a substantially certain consequence of his

act . . . [t]he existence of this knowledge or intent may be inferred from his conduct and surrounding circumstances." *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 98 (S.D. 1993).

[¶ 49.] I am firmly convinced that the trial court erred in not holding Ireland's conduct intentional. *Bland v. Davison County*, 1997 SD 92, ¶ 19, 566 N.W.2d 452, 458. Therefore, I would reverse.

[¶ 50.] I am authorized to state that Justice GILBERTSON joins in this dissent.