Scileppi, J.
H.J.R. Realty Corporation was organized in 1941 under the laws of the State of New York, by tenants of 128-138 Mott Street in New York City for the sole purpose of owning and managing the property and the building at that address.
The tenants involved in the corporation were Chatham Metal Products, Inc. (hereinafter referred to as Chatham), National *546 Machinery Exchanges, Inc. (hereinafter referred to as National) and Henry Nelkin, Inc. (hereinafter referred to as Nelkin).[1]
At the time of the incorporation, all of the shareholders entered into an agreement, which, in relevant part, provided: “ That all of the parties to this agreement, are not only shareholders in H.J.R. Realty Corporation, but are also tenants or are financially interested in firms which are tenants in the building owned by the said realty corporation. That in furtherance of the aim to make the building show a profit and so that the building may be kept in good repair, the following have been agreed upon:
“ That the rental per square foot shall be decided upon and shall be charged equally to each tenant interested in the corporation owning the building. The charge for other tenants shall be decided by the officers of the corporation.”
Since 1941 Chatham, National and Nelkin (until 1961) have occupied most of the space in the building at rentals far lower than the property’s fair rental value. As a result the corporation has earned little, if any, net profits since its inception.
In 1946 Charles Richter sold his interest in Chatham and in 1961 Nelkin terminated its tenancy in the building. Richter and Nelkin no longer derived any benefit from owning stock in the corporation since neither of them shared in the discounted rentals. In 1968 the Nelkin and Richter interests (who control 4/9 of the issued stock) began a campaign to convince the shareholders of Chatham and National (who control the other 5/9 of the stock) to disregard the shareholders’ agreement and pay a fair and reasonable rent, to dissolve the corporation and sell the building, or to buy the minority shares at a reasonable price. In February of 1968 the shareholders of National refused to attend a special meeting called by Nelkin and Richter and, instead, an informal meeting was held. It became clear at the meeting that the differences between the majority shareholders (National and Chatham) and the minority shareholders (petitioners Nelkin and Richter) were irreconcilable. For one thing, the majority shareholders declared that the shareholders’ agree *547 ment of 1941 authorized the corporation to charge “ interested tenants ” discounted rentals and that as the controlling majority they intended to manage the buildings in compliance with the agreement. Moreover, in response to Richter and Nelkin’s offer to sell their stock, the majority offered only what they had paid in 1941. It was also announced by Chatham that it was intending to move into even more space in the building which was to be vacated by another tenant.
In October of 1968 Nelkin and Richter, as minority shareholders, instituted the instant special proceeding in accordance with section 1104 (subd. [c]) of the Business Corporation Law seeking judicial dissolution of the corporation. The Supreme Court granted the petition and placed the proceeding on the calendar. On appeal, the Appellate Division reversed and dismissed the petition on the ground that it failed to state a cause of action for dissolution.
The sole issue presented oh this appeal is whether petitioners, Nelkin and Richter, have made out a cause of action for dissolution of respondent corporation.[2] It is our opinion that they have not.
In our opinion petitioners’ contention that the majority shareholders are continuing the existence of the corporation solely for their own benefit and that, therefore, the corporation should be dissolved “as a matter of judicial sponsorship ” in accordance with Leibert v. Clapp (13 N Y 2d 313-315) is without merit (Kruger v. Gerth, 16 N Y 2d 802).
In Leibert v. Clapp (supra) a minority shareholder sued to compel the dissolution of the corporation in which he owned stock. The plaintiff alleged that the majority shareholders of the corporation were maintaining the corporate existence only to enable them to wrongfully divert assets and income to the parent corporation and, furthermore, that the majority share *548 holders were attempting to coerce the minority into selling their stock at greatly depreciated prices. This court recognized that there was no statutory authority for judicial dissolution in such a case but stated (p. 315) that such relief is available “as a matter of judicial sponsorship ” where the majority shareholders or directors: “ ‘ have so palpably breached the fiduciary duty they owe to the minority shareholders that they are disqualified from exercising the exclusive discretion and dissolution power given to them by the statute ’ ”. (13 N Y 2d, at p. 317.)
In the instant case, however, the alleged behavior of the majority shareholders could in no event be characterized as a wrongful diversion. The recent case of Kruger v. Gerth (16 N Y 2d 802, supra, affg. 22 A D 2d 916) is in point. In Kruger a minority shareholder alleged that for-several years a majority shareholder had been taking substantial salaries and bonuses, leaving the corporation with only minimal net income. The plaintiff prayed for nonstatutory judicial dissolution in accordance with our decision in Leibert on the ground that the majority shareholder was continuing the corporate existence solely to “ provide himself with employment, at substantial salaries and bonuses * * * thereby * * * exploiting the corporation to the detriment of the other stockholders ”. (22 A D 2d, at p. 916.)
The Appellate Division, in Kruger, found that the majority shareholder was not looting the corporate assets nor was he maintaining the corporation for his own special benefit and that, therefore, the minority shareholder had not established sufficient facts to warrant nonstatutory dissolution. This court affirmed on the opinion at the Appellate Division.
The case for dissolution in Kruger was even stronger than in the instant case since here the majority shareholders have been acting in compliance with a shareholders’ agreement entered into by the minority. Petitioners have alleged only that the shareholders ’ agreement entered into in 1941 is invalid and that the rents paid by the majority shareholders pursuant thereto are unreasonably low. Even if these allegations are assumed to be true, the majority shareholders have not been guilty of looting or exploiting the corporation to the detriment of the minority shareholders, and their actions clearly do not constitute a breach of fiduciary duty owed to the minority. The dis *549 counted rentals that they have been paying since 1941 were not set. arbitrarily but in accordance with the shareholders’ agreement.- Furthermore, although it is true that because of the change in circumstances the majority alone is now benefiting, the existence of the corporation has been continued for the original purpose of operating the building in accordance with the shareholders’ agreement.
It must be noted that the actual validity of the shareholders’ agreement is not relevant in this proceeding for nonstatutory dissolution. The fact that the controlling majority has paid the lower rents in good faith in accordance with the agreement which was believed to be valid by all shareholders until the minority brought about a change in circumstances, belies the allegation of wrongful diversion even if the agreement was in fact invalid. Moreover, both petitioners enjoyed the benefits of the low rent provision in the agreement while their firms were tenants. The fact that by their own voluntary action they no longer benefit by the agreement does not of itself entitle them to judicial dissolution.
As an alternative ground for dissolution, the petitioners state that the corporation failed to hold business meetings between 1952 and 1968 and that, therefore, the minority shareholders are entitled to judicial dissolution according to the terms of section 1104 (subd. [c]) of the Business Corporation Law which authorizes a petition for dissolution on the ground that: "the shareholders are so divided that they have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors ”.
It is.our opinion that even if the facts alleged in the petition are taken to be true, dissolution pursuant to section 1104 (subd. [c]) is not warranted since it is not alleged that the shareholders are so divided that they have failed to elect directors but merely that the corporation failed to call a meeting for such purpose until 1968.
In our opinion, the mere failure to hold shareholders’ meetings in and of itself, does not constitute sufficient grounds to bring about a dissolution under section 1104 (subd. [c]). As was well stated in Matter of Gliedman (N.Y.L.J., March 5, 1964, p. 15, col. 3): “ Mere failure to hold annual meetings cannot in itself give cause for dissolution of the corporation. In the absence of *550 a showing of equal division and disagreement among the directors, a petition is insufficient which alleges only that the stockholders are equally divided and cannot elect directors, without showing that an unsuccessful attempt to elect directors has been made ”,
Moreover, it should be noted that the majority called a special meeting for the purpose of electing directors, and on November 11, 1968 the meeting was held and directors were elected.
Petitioners’ allegations that the 1941 shareholders’ agreement is invalid and that Chatham’s proposed occupation of additional space within the building is in violation of the agreement, may he adequately adjudicated in a shareholders’ derivative action to rescind or reform the agreement. They are not, however, sufficient to justify the exercise of the Supreme Court’s inherent power to order nonstatutory judicial dissolution.
Accordingly, the order of the Appellate Division dismissing the complaint should be affirmed.

. Fifty-four shares of stock (of 100 authorized) were issued. Nathan Horowitz, James Horowitz, and Charles Richter (Chatham) each received 6 shares; Irving Epstein (National) received 18 shares; and Henry Nelkin, Inc. (Nelkin) was issued 18 shares.

. Respondent contends that the Supreme Court did not have power to dissolve the corporation on nonstatutory grounds in the special proceeding instituted pursuant to section 1104 (subd. [c]) of the Business Corporation Law. We do not agree. Although the cause of action for dissolution pursuant to the rrle espoused in Leibert v. Clapp (13 N Y 2d 313) should have been asserted in an action and not in a special proceeding, the Supreme Court had apparently obtained jurisdiction over the necessary parties and, therefore, did not abuse its discretion by entertaining the nonstatutory cause of action (CPLR 103, subd. [c]).