2004 SD 8

**Bruce H. LIEN, on behalf of himself individually, and Bruce H. Lien, on behalf of other shareholders of Pete Lien & Sons, Inc., a South Dakota corporation acting on a shareholder derivative basis, Plaintiff and Appellee (# 22621, 22622, Notice of Review # 22636), Plaintiff and Appellant (# 22640),**

v.

**Charles H. LIEN, Peter C. Lien, Sandra J. Lien, and Pete Lien & Sons, Inc., a South Dakota corporation, Defendants and Appellants (# 22621), Defendants and Appellees (# 22640),**

and

**Edwin L. Hubbeling, Jerrold L. Brown, and Peter S. Birrenkott, individually and in their capacity as directors of Pete Lien & Sons, Inc., a South Dakota corporation, Defendants and Appellees (# 22640),**

and

**Barbara Jeanne Lien, Julie Anne Rathbun, Larece Lien–Shattuck, Melanie Lien Palm, Elizabeth Lucille Lien, Suzanne Lien Gabrielson, Christian B. Lien and Stephanie Anne Lien, Defendants in Intervention and Appellants (# 22622), Defendants in Intervention and Appellees (# 22640).**

Nos. 22621, 22622, 22636, 22640.

Supreme Court of South Dakota.

Argued Aug. 27, 2003.

Decided Jan. 21, 2004.

Thomas W. Stanton of DeMersseman, Jensen, Christianson, Stanton, & Huffman, Rapid City, South Dakota, Attorneys for plaintiff and appellee Bruce H. Lien (# 22621, 22622, Notice of Review # 22636) and plaintiff and appellant Bruce H. Lien (# 22640).

Jeffrey G. Hurd of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for defendants and appellants Charles H. Lien, Peter C. Lien, Sandra J. Lien and Pete Lien & Sons, Inc. (# 22621) and defendants and appellees Charles H. Lien, Peter C. Lien, Sandra J. Lien and Pete Lien & Sons, Inc. (# 22640).

Larry M. Von Wald of Beardsley, Jensen & Von Wald, Rapid City, South Dakota, Attorneys for defendants and appellees Edwin L. Hubbeling, Jerrold L. Brown and Peter S. Birrenkott (# 22640).

Barton R. Banks of Banks, Johnson, Colbath, Sumner & Kappelman, Rapid City, South Dakota, Attorneys for defendants in intervention and appellants Barbara Jeanne Lien, Julie Anne Rathbun, Larece Lien–Shattuck, Melanie Lien Palm, Elizabeth Lucille Lien, Suzanne Lien Gabrielson, Christian B. Lien and Stephanie Anne Lien (# 22622) and defendants in intervention and appellees Barbara Jeanne Lien, Julie Anne Rathbun, Larece Lien–Shattuck, Melanie Lien Palm, Elizabeth Lucille Lien, Suzanne Lien Gabrielson, Christian B. Lien and Stephanie Anne Lien (# 22640).

TIEDE, Circuit Judge.

## INTRODUCTION

[¶ 1.] In this consolidated appeal we address: 1) the trial court's grant of partial summary judgment concerning shareholder deadlock; 2) the equitable remedy fashioned by the trial court as a result of the shareholder deadlock; 3) the trial court's dismissal of various causes of action with prejudice; and 4) the trial court's grant of a protective order and decision quashing a subpoena duces tecum. We reverse the trial court's decision on issue one, do not address issue two and affirm the trial court's decision on issues three and four.

## FACTS

[¶ 2.] Pete Lien & Sons, Inc. (PLS) was originally founded in 1944 as a partnership with Bruce Lien (Bruce), Charles Lien (Charles) and their father, Pete Lien, Sr., as the co-equal partners. The business operates in the quarrying and lime industries in the Rapid City area as well as several other states. PLS was incorporated in 1952 as a South Dakota corporation with the three partners as equal shareholders. Since its inception, PLS's corporate governing documents have restricted the right of a shareholder to freely sell or transfer shares except to another shareholder. Over the years Pete Lien, Sr. gifted and sold stock to Bruce and Charles. When he died in 1969, Bruce and Charles inherited the remainder of his stock and each became fifty percent shareholders of the corporation. PLS authorized and issued both voting and non-voting stock.

[¶ 3.] PLS grew and prospered into a company with approximately 450 employees and an annual payroll of approximately $17 million. Both Bruce and Charles were actively involved in PLS. Bruce testified that he was responsible for most of the company's financing as well as seeking new opportunities for the company's expansion. Bruce resigned from PLS's executive committee in 1982, but continued to serve on the board of directors as the chairman. Charles served as president of PLS between 1982 and 1996. He was also chief operating officer from 1985 until 1996. At the time of trial, Bruce was 75 years old and Charles was 73 years old. While both diminished their day-to-day role in PLS in recent years, they continued to serve on the board of directors.

[¶ 4.] Bruce is married and has no children. Charles is married and has nine children (collectively referred to as the Nine Liens). Four of Charles' children are presently employed by PLS-defendants Pete Lien and Sandra Lien and defendants in intervention Suzanne Lien Ga-

brielson and Christian B. Lien (Four Liens). Pete Lien is the president of PLS and on the board of directors. Sandra Lien is currently vice president of corporate development for all PLS divisions. Suzanne Lien Gabrielson is chief financial officer. Also, two of the Four Liens have spouses that are employed in management positions with PLS. Several other children and grandchildren of Charles are either involved with contract work for PLS or work at PLS.

[¶ 5.] Bruce holds 50 percent of the voting and non-voting shares. Charles holds 50 percent of the voting shares, but has either sold or gifted some of his non-voting shares to his wife and each of his nine children. Over the years, Bruce executed various documents that demonstrated a willingness to either gift his shares in PLS or sell them at a favorable price to the Nine Liens during his lifetime or upon his death. However, all parties testified that it was understood that Bruce was under no obligation to do so.

[¶ 6.] The current board of directors for PLS consists of seven members. Four Lien family members-Bruce, defendants Charles, Pete Lien, and Sandra Lien, and three non-family, long-time employees-defendants Edwin Hubbeling, Jerrold Brown and Peter Birrenkott. Directors have not been elected since 1998.

[¶ 7.] Bruce and Charles have often disagreed as to the future direction of PLS. Bruce has pushed for the company to be sold privately or converted to a publicly owned corporation. Charles has resisted both alternatives although, on occasion, he has agreed to consider a proposal. Bruce and Charles are equally compensated from PLS. All dividends are distributed pro rata in accordance with the respective share holdings. As the holder of more shares in the corporation than any other single individual, Bruce receives more income and dividends than any other shareholder. However, as it relates to the distribution of dividends there has been considerable disagreement concerning whether to authorize dividends and, if so, in what amount.

[¶ 8.] Charles' vision is to preserve PLS for future generations of the Lien family by controlling present returns and thereby allowing for the growth of PLS. Generally, Charles advocates for the distribution of dividends only to meet the payment of a shareholder's individual income tax liability arising from the status of PLS as a subchapter S corporation. Whereas, Bruce wants to increase present returns and desires to maximize current payments of dividends. In support of this position, Bruce pursued a course of action involving subordinated notes. In this regard, Bruce requested that PLS declare dividends equal to 100 percent of net earnings for a year on the condition that the shareholders loan back those amounts to PLS. The shareholders would then receive notes subordinate to PLS's debt to its bank creditors. PLS would then pay interest to the shareholders on this subordinated debt in addition to payment of the principal on the loans. At Bruce's urging, PLS issued subordinated notes from 1992 to 1997.

[¶ 9.] In December 1998 a board meeting was held and the issue of payment of dividends was addressed. Charles made a motion, supported by his son Pete, to only pay dividends for the purposes of paying shareholders' tax liability until the corporation reduced its debt level to $8.5 million. This was contrary to Bruce's desire to issue subordinated notes. Despite Bruce's strong opposition to this motion, the other six directors agreed that it was not advisable to issue subordinated notes

and determined that dividends would be paid for purposes of shareholder tax liability only. After this meeting, Bruce stated that he would vote against the existing board at the next shareholders' meeting and elect directors that would vote as he desired. He further threatened that if he won control of the board of directors he would fire certain senior members of PLS's management. There was testimony that he contacted directors and told them they would be on his list unless they changed their vote on the issue of dividends, apologized to him for voting against his position as to dividends and resigned from the board.

[¶ 10.] In response to Bruce's threats, the board passed a resolution at the March 29, 1999, board meeting providing for a director qualification. The director qualification provided that no person could serve as a director unless he or she had previously served on the board or had been an officer of the corporation for at least five years. Bruce has not attended shareholders' meetings or directors' meetings since the passage of the director qualification resolution. Since Bruce and Charles each hold 50 percent of the voting shares in the corporation, Bruce's refusal to attend shareholders' meetings has resulted in the lack of a quorum for purposes of electing new directors.

[¶ 11.] In April 2000 Bruce brought this action against PLS and the other members of the board of directors [1] alleging minority shareholder oppression, breach of fiduciary duty, and tortious interference with prospective business rela-

tions or expectancy. He later amended his complaint to seek dissolution of PLS under SDCL 47–7–34(3) on the grounds of shareholder deadlock. In December 2000 the remaining non-voting/non-director shareholders in PLS (defendants in intervention) filed a motion to intervene as defendants. Their motion was granted by the trial court.

[¶ 12.] On November 28, 2001, the trial court granted partial summary judgment to Bruce finding that there was shareholder deadlock in failing to elect directors for the requisite period of time as provided in SDCL 47–7–34(3) and ordered that a hearing be held to determine the most appropriate equitable remedy. A petition for intermediate appeal from the summary judgment was denied by this Court.

[¶ 13.] Following trial, the court entered findings of fact, conclusions of law and an amended judgment determining that the most equitable manner to break the existing deadlock was a blind auction between Bruce and all other shareholders for the sale of the corporation. The trial court included the Lien defendants, except PLS, and the defendants in intervention as comprising one faction competing with Bruce. The trial court set out the procedure to be followed and ordered that the corporation be liquidated in the event that neither faction is able to complete the purchase as directed. By separate findings of fact, conclusions of law and judgment, the trial court dismissed Bruce's claims of oppression, breach of fiduciary duty, and tortious interference with business relations

1. For purposes of identifying the various appellants and appellees in this consolidated appeal, Bruce Lien will be referred to as Bruce or plaintiff. The Lien directors and PLS will collectively be referred to as Lien defendants. The three director defendants that are not members of the Lien family will be referred to as non-Lien defendants. Non-voting, non-director shareholders in PLS will be referred to as defendants in intervention. Other parties will be referred to as previously set forth.

or expectancy with prejudice.[2]

[¶ 14.] This is a consolidation of three appeals filed as to this case. Defendants in intervention have filed an appeal of the trial court's amended judgment, along with the named defendants. Bruce also filed an appeal of the trial court's dismissal of his tort claims against the Lien defendants and non-Lien defendants.

## STANDARD OF REVIEW

 A trial court's findings of fact will not be set aside unless they are clearly erroneous. SDCL 15–6–52(a). We will declare a finding of fact clearly erroneous only if we are definitely and firmly convinced that a mistake has been made. *First Nat'l Bank in Brookings v. Kuechenmeister*, 2002 SD 9, ¶ 12, 639 N.W.2d 184, 187 (citing *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994)). We review the trial court's conclusions of law de novo. *Carstensen Contracting, Inc. v. Mid–Dakota Rural Water System, Inc.*, 2002 SD 136, ¶ 8, n. 2, 653 N.W.2d 875, 877 n. 2. . . . Our standard of review for cases in equity is abuse of discretion. *Kuechenmeister*, 2002 SD 9 at ¶ 12, 639 N.W.2d at 187 (citing *Mattson v. Rachetto*, 1999 SD 51, ¶ 9, 591 N.W.2d 814, 817). An abuse of discretion occurs only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion. *Mattson*, 1999 SD 51, ¶ 9, 591 N.W.2d at 817 (citations omitted).

*Hofeldt v. Mehling*, 2003 SD 25, ¶ 9, 658 N.W.2d 783, 786–87.

## ISSUES AND ARGUMENTS

### ISSUE ONE

[¶ 15.] **Whether the trial court erred in finding deadlock under SDCL 47–7–34(3).**

[¶ 16.] The trial court granted partial summary judgment by its order dated November 28, 2001, finding that there were no genuine issues of material fact and that as a matter of law there existed a deadlock under SDCL 47–7–34(3). The trial court ordered a hearing to determine the most appropriate equitable remedy to address the deadlock after which it determined the remedy to be a blind auction between the parties.

 [¶ 17.] Our standard of review for summary judgment is well settled.

Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v.*

---

**2.** While the findings of fact and conclusions of law indicate that the dismissal is conditional on the implementation of the trial court's parallel judgment as to the issue of sharehold- er deadlock, the judgment does not state that the dismissal is conditional and does not specifically incorporate the findings of fact and conclusions of law.

*Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

*Mattson*, 1999 SD 51, ¶ 8, 591 N.W.2d at 816–17 (quoting *Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586).

[¶ 18.] The trial court found that there was no genuine material dispute of fact that Bruce and Chuck each own 50 percent of the voting shares of PLS and that the shareholders have failed for at least two consecutive annual meetings to elect successor directors for those whose terms have expired. Those findings of fact are not clearly erroneous. "Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo." *State v. Hirning*, 1999 SD 53, ¶ 8, 592 N.W.2d 600, 603 (citing *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610).

[¶ 19.] SDCL 47–7–34(3) provides:

The circuit court shall have full power to liquidate the assets and business of a corporation in an action by a shareholder when it is established:

. . .

(3) That the shareholders are deadlocked in voting power, and have failed, for a period which included at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; . . . .

[¶ 20.] Reviewing the trial court's legal conclusions de novo, we do not agree that the facts as found by the trial court constitute deadlock under SDCL 47–7–34(3). There was no showing that the shareholders were deadlocked in voting power simply because Bruce refused to attend shareholders' meetings and participate in a vote as to election of directors. Bruce cannot artificially create a deadlock by refusing to attend and participate at shareholders' meetings and then seek an equitable remedy under SDCL 47–7–34(3). *See Nelkin v. HJR Realty Corp.*, 25 N.Y.2d 543, 307 N.Y.S.2d 454, 255 N.E.2d 713, 717 (1969) (citation omitted) (applying language similar to SDCL 47–7–34(3) and finding that "[i]n the absence of a showing of equal division and disagreement among the directors, a petition is insufficient which alleges only that the stockholders are equally divided and cannot elect directors, without showing that an unsuccessful attempt to elect directors has been made."); *In re Application of Parveen*, 259 A.D.2d 389, 687 N.Y.S.2d 90, 92–93 (1999) (citation omitted) (holding that the statute "requires a showing of deadlock, but there can be no deadlock where, as here, the contending factions have not even attempted to elect directors.").

[¶ 21.] The trial court concluded that there was voting deadlock because Bruce and Charles each hold 50 percent of the voting shares and they disagree as to their vision for the corporation. However, although there were several shareholders' meetings noticed to Bruce, there was never a tie in the vote for director candidates because Bruce refused to attend any of the meetings. If Bruce had attended a shareholders' meeting and a tie vote as to director candidates had resulted, SDCL 47–5–6(3) provided a statutory remedy for breaking a tie vote. SDCL 47–5–6(3) provides:

To render effective the cumulative voting rights provided by article XVII, section 5, of the Constitution of this state,

and except as hereinafter provided, where several directors are to be elected for terms of the same duration:

. . .

> (3) If there exists a tie vote between candidates, with resulting failure of choice as to any place as director, such choice shall be determined by drawing of lots under such procedure that all rights of the candidates involved in such tie are adequately safeguarded.

If Bruce had attended a meeting, directors would have been elected because there would have been a drawing of lots to break any possible tie in the votes. However, the statutory remedy of SDCL 47–5–6(3) for breaking a tie vote was not invoked because of Bruce's refusal to attend shareholders' meetings.

[¶ 22.] The trial court excused Bruce's refusal to attend shareholders' meetings by citing to the director qualification. Director qualifications are specifically authorized by SDCL 47–5–1. The trial court found that the directors adopted the director qualification after determining it to be in the company's best interests and that it was not oppressive or a breach of fiduciary duty. While the trial court points out that there were no prior formal director qualifications, a review of the record shows that in the more than fifty year history of the corporation only two directors have ever served that did not meet the director qualification passed by the board. Those two prior outside directors served some years ago and were specifically required by a bank as a condition of financing. The director qualification merely formalized what had been the policy followed by Chuck and Bruce for many years as to selection of directors. The

record shows that PLS has thrived and prospered under this policy.

[¶ 23.] We cannot agree with the trial court's conclusion that the director qualification justified Bruce's refusal to attend shareholders' meetings. A shareholder may not boycott a shareholders' meeting and claim deadlock just because he does not believe that his position or arguments will carry the day. Even if the director qualification narrows the pool of eligible candidates from which Bruce may select directors, any director chosen has a fiduciary duty which obligates him or her to avoid acting as a rubber stamp for either side. Directors are held to a high degree of diligence and due care in the exercise of their fiduciary duties to shareholders. *Case v. Murdock*, 488 N.W.2d 885, 889–90 (S.D.1992) (citing *Mobridge Community Industries v. Toure*, 273 N.W.2d 128, 133 (S.D.1978)). "Directors of a corporation occupy a fiduciary position in respect to the corporation and its shareholders, and are required to exercise the utmost good faith in all transactions touching a director's duty." *Case*, 488 N.W.2d at 890 (citing *Schurr v. Weaver*, 74 S.D. 378, 384, 53 N.W.2d 290, 293 (1952)). *See also Landstrom v. Shaver*, 1997 SD 25, ¶ 84, 561 N.W.2d 1, 18. A director must exercise independent judgment and act in the corporation's best interest, not as a puppet for a particular shareholder.

[¶ 24.] While Bruce alleges that the director candidates eligible under the director qualification are nothing more than figureheads who will follow the wishes of Chuck, Bruce's own testimony is that he wished to elect directors that would be duty bound to act as he told them to act. We cannot and will not assume that any director elected hereafter, including any elected through the tie breaker statute,

will not follow the law and exercise their own best judgment as to what action is in the best interests of PLS and all of its shareholders. Certainly, any director who would fail to do so acts at his or her own peril and at risk of liability to the shareholders for breach of fiduciary duty.

[¶ 25.] Therefore, we reverse the trial court and find as a matter of law that there is no deadlock under SDCL 47–7–34(3) on these facts.

## ISSUE TWO

[¶ 26.] **Whether the trial court abused its discretion in fashioning an equitable remedy.**

[¶ 27.] Because we have held that there is no deadlock under SDCL 47–7–34(3) entitling Bruce to equitable relief, we do not reach this issue.[3]

## ISSUE THREE

[¶ 28.] **Whether the trial court erred in dismissing Bruce's causes of action for oppression, breach of fiduciary duty, tortious interference with business relations or expectancy and a claim for punitive damages with prejudice.**

[¶ 29.] The trial court entered a judgment dated October 1, 2002, dismissing Bruce's claims of oppression, breach of fiduciary duty, tortious interference with business relations or expectancy and a claim for punitive damages with prejudice.[4] We affirm the trial court's dismissal of these claims.

[¶ 30.] "Whether conduct is oppressive is a legal conclusion." *Landstrom*, 1997 SD 25, ¶ 37, 561 N.W.2d at 7 (citing *Robblee v. Robblee*, 68 Wash.App. 69, 841 P.2d 1289, 1293 (1992); *Davis v. Sheerin*, 754 S.W.2d 375, 380–81 (Tex.App. 1988)). Also, "[t]he existence of a fiduciary duty and the scope of that duty are questions of law for the trial court." *Landstrom*, 1997 SD 25, ¶ 84, 561 N.W.2d at 18 (citing *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 839 (S.D.1990)). The trial court found that the defendants' actions were not oppressive or a breach of fiduciary duty. The trial court also found that the directors' actions were done in the best interests of the corporation. Bruce receives more income and dividends from PLS than any other single individual. While the record reveals he is disappointed and upset that the other directors have

---

3. However, we do question the appropriateness of the remedy based on our review of the record and the findings made by the trial court. While the trial court purports to have considered the factors listed in *Henry George & Sons, Inc. v. Cooper–George, Inc.*, 95 Wash.2d 944, 632 P.2d 512, 517 (1981) among other factors, the facts as found by the trial court and applied to those factors do not appear to support the remedy ordered. While a trial court has broad discretion in fashioning an equitable remedy, it should be noted that "[t]o say that a decision is discretionary is not to mean that it is unguided." *Adrian v. McKinnie*, 2002 SD 10, ¶ 10, 639 N.W.2d 529, 533. "This is especially true in equity cases, where discretion is more carefully scrutinized." *Id.*

4. Bruce claims that the trial court erred in dismissing these claims because they were not before the court at the time of trial and that he did not submit all of his evidence. Alternatively, he claims that he is entitled to judgment on these claims as a matter of law based on the evidence presented at trial. These claims were in Bruce's pleadings. The trial court heard six days of testimony from the parties. The record in this case is extensive. Both parties were given wide latitude by the trial court as to the presentation of evidence relevant to these claims. While Bruce asserts on appeal that there is a "wealth of additional evidence he would have offered," he fails to specify what that additional evidence might have been.

determined it is not in the best interests of the corporation to withdraw as much income from PLS as possible to satisfy Bruce's demands, this does not constitute a cause of action for oppression. Based on the trial court's findings of fact and the evidence presented, Bruce has failed to establish oppression as a matter of law.

[¶ 31.] Bruce further claimed that the director qualification amounted to tortious interference with his business relations or expectancy. He claimed that the director qualification interfered with his ability to sell his shares as well as reduced the value of his shares in the corporation. The essential elements of tortious interference with business relations or expectancy include:

(1) the existence of a valid business relationship or expectancy;

(2) knowledge by the interferer of the relationship or expectancy;

(3) an intentional and unjustified act of interference on the part of the interferer;

(4) proof that the interference caused the harm sustained; and

(5) damage to the party whose relationship or expectancy was disrupted.

*Mueller v. Cedar Shore Resort, Inc.*, 2002 SD 38, ¶ 35, 643 N.W.2d 56, 68 (citing *Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D.1992) (citations omitted)). "In *Tibke*, we held that to establish a 'valid business relationship or expectancy,' there had to be a showing of a 'contract or business relationship' between the plaintiff and an identifiable third party." *Landstrom*, 1997 SD 25, ¶ 75, 561 N.W.2d at 16 (citing *Tibke*, 479 N.W.2d at 908–09). In order for Bruce to prevail on this claim, "there must

be a 'triangle'-a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and the third party." *Landstrom*, 1997 SD 25, ¶ 75, 561 N.W.2d at 16. Based on Bruce's own testimony, there is no identifiable third party. Bruce testified as follows:

Q. Well, let me ask you this. Is it your testimony that you've never tried to sell your Pete Lien & Sons stock?

A. That's correct, I have never been real serious about it. I have delved into it to see what my options are to find out what it's worth but I've never really been serious about going through with it.

Q. Is that true even today?

A. That true? Yes.

Bruce cannot now claim a better version of the facts than he testified to himself. *Winterton v. Elverson*, 389 N.W.2d 633, 637 (S.D.1986) (citation omitted). Therefore, Bruce cannot establish the first element of his claim of tortious interference and the trial court did not err in dismissing the claim.

## ISSUE FOUR

[¶ 32.] **Whether the trial court erred in granting a protective order and quashing the subpoena duces tecum served on Attorney Larry M. Von Wald.**

[¶ 33.] Bruce asserts error in the trial court's grant of a protective order and decision to quash the subpoena duces tecum served on Attorney Larry M. Von Wald. Von Wald drafted the director qualification and was hired by the corporation to represent PLS after Bruce stated his intention to sue PLS. In this appeal, he represents the non-Lien defendants. " 'We review the trial court's rulings on

discovery matters under an abuse of discretion standard.' " *Eccleston v. State Farm Mut. Auto. Ins. Co.*, 1998 SD 116, ¶ 33, 587 N.W.2d 580, 584–85 (quoting *Maynard v. Heeren*, 1997 SD 60, ¶ 5, 563 N.W.2d 830, 833 (citations omitted)). " '[T]he extent of discovery permitted by either side rests in the discretion of the court.' " *Eccleston*, 1998 SD 116, ¶ 33, 587 N.W.2d at 585 (quoting *State v. Erickson*, 525 N.W.2d 703, 711 (S.D.1994) (alterations in original) (citations omitted)). Bruce has not shown that the trial court abused its discretion and we affirm.

[¶ 34.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, and TIEDE, Circuit Judge, MILLER, Retired Justice, and LOVRIEN, Circuit Judge, concur.

[¶ 35.] TIEDE, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 36.] MILLER, Retired Justice, for KONENKAMP, Justice, disqualified.

[¶ 37.] LOVRIEN, Circuit Judge, for ZINTER, Justice, disqualified.